FRANK WHITE ET AL V. MRS. CALLIE WHITE ET AL.

No. 8103. Decided June 23, 1943.
(172 S. W., 2d Series, 295.)

*J. F. Carl,* of Edinburg, for petitioner.

It was error for the court to instruct the jury to return a verdict for the defendants because the evidence was amply sufficient to create an issuable fact as to the competency of J. D. White to know and understand the nature and effect of his act at the time of executing the deed which conveyed the bulk of his property to his wife and daughter, to the exclusion of his other children and their descendents. Gulf, C. & S. F. Ry. Co. v. Jackson, 109 S. W. 478; Texas Cities Gas Co. v. Ellis, 63 S. W. (2d) 717; Henderson v. Burkholder, 29 S. W. (2d) 937.

*S. N. McWhorter,* of Weslaco, for respondents.

The issue involved was the mental capacity of J. D. White to execute the deed, and the Court of Civil Appeals having found that the evidence was sufficient to raise a fact issue for the jury, that finding was conclusive on the appellate court. Wilson v. Freeman, 108 Texas 121, 185 S. W. 993; Owens v. Tedford, 114 Texas 390, 269 S. W. 418; Gibbs v. Barkley, 242 S. W. 462.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

This is a suit by Frank White et al to cancel a deed executed by J. D. White, father of Frank White and grandfather of the

other plaintiffs, conveying certain lands in Hidalgo County to respondents, Mrs. Callie White and Della White, wife and daughter, respectively, of the grantor. At the conclusion of plaintiffs' testimony, the trial court instructed a verdict for the defendants. Judgment upon that verdict was affirmed by the Court of Civil Appeals at San Antonio. 168 S. W. (2d) 324.

The deed in question was executed on June 12, 1941, and J. D. White died seventeen days later. The petition alleged that for months prior to his death White was afflicted with heart trouble, bladder trouble and a dropsical condition of his body and limbs which so weakened his body and mind that on June 12, 1941, he was "unable to transact, or to know and understand, a business transaction and to know and understand the nature and extent of a business transaction, and was in fact in such a condition physically and mentally that he could not, and did not, know and understand the nature and extent of any business transaction." We have to decide whether the courts below were correct in holding that the evidence presented on that allegation was not such as to raise an issue for the jury's determination.

To summarize the testimony most favorable to the plaintiffs' claim of lack of mental capacity on the part of J. D .White, it appears from the record that he was seventy-five years old when he executed the deed; that he had been sick a few days short of nine months when he died; that he suffered "general heart trouble" and asthma and developed the dropsical condition some days before the deed was executed; that the dropsy resulted in a painful swelling of his stomach, limbs, head and face; that he was in great discomfort and groaned when he was moved. Although they did not testify, two doctors were called to see Mr. White on the very day the deed was executed, and one thing they did for him was to drain his bladder. One witness, Mrs. White's stepbrother, testified that he saw Mr. White on June 10, 1941; that the latter's feet and legs were swollen "in a strut" and that he showed that he was suffering and "acted as though he was smothering"; that "he would have wavers" in his conversation and "did not follow a subject all of the time plumb through"; that his conversation did not impress witness as being normal "because he was suffering too much, he was in too much misery." A practicing physician of fifty years experience, but who never saw Mr. White, testified as to the effect of bodily ailments on the mind. He said that diseases such as Mr. White had would effect the patient's mind; that the blood plasma "that circulates through the entire body, circulates

through the brain, the same as any other part of the body"; that "the blood plasma that are diseased and are drawn off or are in the tissues of the body are borne out and circulate through the brain tissues the same as any other part of the body, and any infection of that would hinder the function of the brain tissues the same as any other part of the body"; that pressure caused by a swelling of the head such as Mr. White had would affect his brain and detract from his ability to think consecutively, "because the pressure of the blood hinders its function"; that "more than that, there is a lot of poison in the system that is not eliminated, * * that acts on the thinking ability of the patient and dissipates it, hinders its function"; that a man in such a condition could not "act intelligently about anything"; and that "a dropsical condition, if pronounced, is very hard on the mental condition" of the patient.

In determining whether it was proper to instruct a verdict in this case, we must view the evidence in the light most favorable to the petitioners, the losing parties. Thomas v. Postal Telegraph Cable Co. (Com. App.), 65 S. W. (2d) 282. We must indulge against the instruction every inference that may properly be drawn from the evidence. Texas Employers' Ins. Ass'n v. Boecker (Civ. App.), 53 S. W. (2d) 327 (er. ref.). And, if the record reflects any testimony of probative force in favor of the losing parties, we must hold the instruction improper. Clutter v. Wisconsin Texas Oil Co. et al (Civ. App.), 233 S. W., 332 (er. ref.). A peremptory instruction is warranted only when the evidence is such that no other verdict can be rendered and the winning party is entitled, as a matter of law, to a judgment. Stevens et al v. Karr, 119 Texas, 479, 33 S. W. (2d) 725. Applying these principles and considering Mr. White's age, his physical condition, the doctor's testimony as to the probable effect of his physical ailments on his mind, and the other testimony which we have summarized, we cannot say that reasonable minds could not conclude that he lacked sufficient mental capacity to execute the deed in controversy. Therefore, we hold that the issue should have been left for the jury's determination. The facts here closely parallel those in Chambers et al v. Winn et al, 137 Texas 444, 154 S. W. (2d) 454. Many supporting authorities are cited in 36 Texas Digest, keys 14p and 178.

Petitioners urge that the deed in question is void for want of the wife's joinder because the land conveyed was the homestead of J. D. White and the grantees. The parties to the instrument were the sole constituents of the family, and we cannot see how their enjoyment of the homestead was in any way dis-

turbed by the conveyance. It was in no sense an alienation of the homestead because all members of the family, grantor as well as grantees, were left with its full possession and enjoyment. Their situation in that regard remained the same. We overrule the point. See Martin et al v. Barnum et al (Civ. App.), 286 S. W. 550, and Brooks et al v. Butler et al, 184 Okla. 414, 87 Pac. (2d) 1092, citing Bassett v. Powell, 178 Ala. 340, 60 So. 88.

The remaining point relates to the exclusion of certain testimony, but we need not decide it since the question may not arise in another trial.

The judgments of the courts below are reversed and this cause is remanded to the district court for a new trial.

Opinion adopted by the Supreme Court June 23, 1943.