NEIGUT v. McFADDEN.
No. 4905.

Court of Civil Appeals of Texas. El Paso.

March 4, 1953.

Rehearing Denied April 1, 1953.

Gilbert T. Adams, Beaumont, for appellant.

Jones, Hardie, Grambling & Howell, El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of El Paso County, 41st Judicial District, in favor of David L. McFadden, hereinafter styled defendant, against William A. Neigut, hereinafter styled plaintiff. The judgment was that the plaintiff take nothing as against the defendant. The plaintiff's cause of action was founded on an alleged written agreement signed by the defendant, which was as follows:

"I will pay five per cent commission on sale of Food Mart stores and Texas

Wholesale Company, fixtures at book value, inventory at cost, good will to be $200,000.00.

"All over $200,000.00 for (good will) will be on a fifty-fifty basis with Mr. Neigut. /s/ D. L. McFadden."

Plaintiff averred in substance that before the revocation thereof he procured a purchaser for the property and negotiated the sale thereof to said purchaser, said purchaser being satisfactory to defendant. It is further averred that a sale was consummated through the efforts of plaintiff and that plaintiff by virtue of the premises was entitled to the sum of $100,000; that the purchaser procured by plaintiff was J. Spencer Weed; that said customer agreed to pay $300,000 for good will; later defendant consummated the deal with said Weed for $1,275,109.85, which included the $300,000 aforesaid. Plaintiff sought judgment for the sum of $125,864.86. Plaintiff pled further, supplementally, that after he had produced and tendered to defendant a customer ready, able and willing to buy the property on the terms indicated in the listing, that defendant dealt with the said customer and closed the transaction on terms satisfactory to himself, and that defendant was thereby estopped to deny that plaintiff was the procuring cause of the sale consummated; that from the time the negotiations were initiated by plaintiff with said customer, same were never broken off, and that plaintiff was the procuring cause of the sale consummated.

Defendant answered by general denial and lengthy special denials. Thereafter defendant filed a motion for a summary judgment, alleging in substance that under the depositions and affidavits on file and the pleadings of the parties that it was shown conclusively that there was no genuine issue as to any material fact, and that the defendant was entitled to judgment denying the plaintiff any recovery from plaintiff's suit as a matter of law. It was prayed by the defendant that the motion be set down for hearing. In accordance with the prayer of the defendant the motion was set for hearing on the 17th day of December, 1951.

Plaintiff replied to defendant's motion for summary judgment, and on the 9th day of January, 1952, the court sustained the defendant's motion for summary judgment and decreed that plaintiff take nothing as against the defendant. The judgment recites the filing of the motion and of a supplemental motion, and reply to the affidavit of plaintiff; the submission to the court of the deposition of plaintiff taken on written interrogatories and also the deposition of plaintiff taken on oral interrogatories, and the deposition of defendant taken on oral interrogatories; the affidavit of defendant; the affidavit of Robert H. Hoy; the affidavit of J. Spencer Weed; the introduction in evidence of certain exhibits marked and identified in connection with the hearing; the affidavit of Thornton Hardie; copies of certain leases attached to his affidavit; the motion and supplemental motion for judgment by the defendant.

In this appeal six points of error are urged by plaintiff. Each and all assail the action of the trial court in sustaining the defendant's motion for summary judgment. It is asserted in substance that the action of the court in this respect was error; first, because the evidence raised the issue that plaintiff was the procuring cause of the sale; second, because the evidence raised an issue that prior to the time defendant and buyer Weed went to the attorney to have the contract drawn they had a complete meeting of minds as to the sale; third, because the evidence raised an issue that plaintiff furnished in the person of Weed a purchaser ready, able and willing to purchase on the terms authorized by defendant, and that thereafter defendant took the negotiations in his own hands and concluded a sale to said purchaser in terms satisfactory to him; fourth, because defendant was estopped to deny that plaintiff was the procuring cause of the sale for the reason he excluded plaintiff from the negotiations; fifth, because an issue was raised by the evidence that defendant and Weed actually broke off the negotiations before the consummation of the sale, their minds having theretofore been together, plaintiff having been excluded from the negotiations and the sale having been consummated thereafter on the identical terms agreed upon by the parties; sixth, because the evidence

raised an issue of fact as to whether plaintiff was the procuring cause of the sale in view of the acts and conduct of the seller, McFadden, and the purchaser, Weed, their refusal to continue further negotiations, their refusal to allow him to work out the alleged differences that allegedly arose in New York, the misleading conduct by defendant and the fact that the sale was finally made on terms originally proposed by McFadden and under the contract defendant had with plaintiff; that these facts, or alleged facts, raised an issue which should have been sent to the jury for determination.

Defendant urges two counterpoints, in substance as follows: First: That the undisputed and conclusive evidence upon the motion showed that plaintiff at no time while his listing was in effect produced a purchaser who was in the sense required by law to entitle a broker to commission, ready, able and willing to purchase the assets listed upon the terms specified by the defendant or upon terms satisfactory to defendant; that there was no purchase from defendant while said listing was in effect, that the failure of Weed to consummate the sale was not due to any fault of defendant; Second: That it was established on the hearing beyond dispute that in the spring and prior to May 1st, 1949, that plaintiff procured a prospective purchaser, J. Spencer Weed, for the assets listed by defendant; that a fair opportunity and adequate cooperation and assistance was given plaintiff by defendant in an effort to close the sale to Weed on terms as agreed on between McFadden and Neigut; the negotiations for such a sale came to an end about May 7, 1949 without any sale having been made and without any binding contract of sale having been entered into without legal fault on the part of defendant; that thereafter the listing with Neigut was terminated about May 8, 1949; that approximately eight months thereafter, in January 1950, Weed on his own initiative and through no effort by or intervention on behalf of plaintiff and without plaintiff having been connected with the transaction since the early part of May 1949, resumed negotiations with McFadden and finally on March 29, 1950, a written contract was signed between Food-Mart, Inc., and a Delaware corporation in which Weed and a member of his family owned the common stock as purchaser, and defendant, Frank M. Harris, Robert H. Hoy as sellers and Mamie L. Wilchar as the holder of the legal title of Frank M. Harris in the partnership. This contract provided for the sale and purchase of assets on terms substantially different from those applicable in the original listing with plaintiff, and upon terms and considerations substantially different from those applicable in the original listing with plaintiff. It was conclusively shown under the facts as alleged and as proved by the uncontroverted evidence that as a matter of law plaintiff was not the procuring cause of the sale which was actually consummated and was therefore not entitled to a commission.

The procedure pursued by defendant was in substantial compliance with Texas Rules of Civil Procedure, rule 166–A as to summary judgments. Section (b) thereof provides:

"A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

Section (c):

"The motion shall be served at least ten days before the time specified for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Paragraph (e) provides as to affidavits supporting and opposing the motion. In the words of Rule 166–A

"The judgment sought shall be rendered forthwith if the pleadings, dep-

ositions, and admissions on file, together with the affidavits, if any, show * * * there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A defendant moving for a summary judgment in order to prevail assumes the negative burden of showing as a matter of law that the plaintiff has no cause of action against him. In order to prevail when the motion is submitted it must be shown that no material fact or facts entitling plaintiff to recover remains as an issue. De la Garza v. Ryals, Tex.Civ.App., 239 S.W.2d 854, e. r.; Kaufman v. Blackman, Tex.Civ.App., 239 S.W.2d 422, e. r.; Lesikar v. Lesikar, Tex.Civ.App., 251 S.W.2d 555; Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967.

In short, under a motion for a summary judgment the mover must show that under facts established as a matter of law he is entitled to the judgment sought. There is an analogy between such a motion and a motion to instruct a verdict after the evidence is all introduced. White v. White, 141 Tex. 328, 172 S.W.2d 295; Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725; Air Conditioning, Inc., v. Harrison-Wilson-Pearson, Tex.Sup., 253 S.W.2d 422.

Pure issues of law are tendered by the motion. The first is, are the material facts established as a matter of law; second, if so, what is the law to be applied to the facts so established? Now in a consideration of this case it may help to determine just what material facts it was necessary for plaintiff to establish to entitle him to recover herein, bearing in mind at all times that in order to justify the granting of the motion for summary judgment it was incumbent upon defendant to show the non-existence of these material facts beyond issue.

Plaintiff showing that he produced and tendered a purchaser to the defendant ready, able and willing to purchase on terms authorized by the defendant, would be entitled to a recovery.

Further, if plaintiff tendered to defendant a prospective purchaser and defendant while the property was still listed with plaintiff for sale sold the property to such tendered purchaser on terms satisfactory to him, then plaintiff was entitled to the commission.

In this case it is thought that it is shown as a matter of law that plaintiff never tendered a purchaser ready, willing and able to purchase on terms specified in the listing. There is evidence tending to show that there was a sort of a general assent by the purchaser to purchase on the terms upon which the property was listed. This assent was oral. The parties entered into negotiation and it was contemplated that the contract should be in writing. This negotiation, which occurred on or about the first of May, 1949, did not then end in the sale of the property nor the signing of a binding contract to sell same.

It appears from the evidence that on or about January 1950 negotiations were resumed between defendant and J. Spencer Weed, and that the property was sold to Weed on terms satisfactory to defendant on March 29, 1950. As hereinbefore stated, Weed was introduced to defendant by plaintiff as a prospective purchaser of the stores and other property contemplated. In order to justify the summary judgment entered by the trial court it must appear as a fact that the property was no longer listed for sale with plaintiff. As stated in other words, it must appear as a fact that negotiations for the sale of the property to Weed had been broken off by plaintiff before the consummation of the sale to Weed by defendant. 7 Texas Juris. ¶82, p. 479; Air Conditioning, Inc., v. Harrison-Wilson-Pearson, supra; Goodwin v. Gunther, 109 Tex. 56, 185 S.W. 295, 195 S.W. 848.

There is an analogy between the state of the evidence justifying an instructed verdict and that justifying a summary judgment. White v. White, supra; Stevens v. Karr, supra.

The evidence shows that in the early part of 1949 that defendant and the purchaser Weed went to the office of Mr. Thornton Hardie, attorney for defendant, to have a contract for the purchase of the property drawn; that these negotiations failed; that

in a relatively short time thereafter negotiations were resumed in New York City; that as a result of the negotiations in New York City no contract of sale was entered into, no sale was actually made at that time; that thereafter, about January 1950, according to the evidence, J. Spencer Weed again contacted defendant with reference to the purchase of the property in question; that a sale was consummated March 29, 1950. Defendant seeks to justify the summary judgment on the ground that it appears as a matter of law that the property was not listed with plaintiff at the time of the sale; that plaintiff had abandoned all efforts to sell same and as a matter of law plaintiff's efforts were not the procuring cause of the sale to J. Spencer Weed.

While it is undisputed and established as a matter of law that defendant sold the property in March 1950 to a purchaser with whom the plaintiff had initiated negotiations for the sale, it is likewise true that before the sale in March 1950 defendant had notified the plaintiff that the listing was cancelled.

 The ordinary listing with a broker of property for sale amounts to no more than an offer that if the broker obtains for the seller a purchaser on terms of the listing, the seller will pay the commission as specified in the listing. Like any other offer, same may be withdrawn prior to its acceptance. An acceptance by the broker is constituted by a performance in accordance with the offer. There is a sort of a qualified acceptance when the broker tenders to the seller a purchaser. The broker is then entitled to a reasonable time within which to comply with the condition as to compensation. After such reasonable time has elapsed without compliance with the condition, the seller may withdraw the listing. The withdrawal must, however, be in good faith—it must be before and not after the broker has procured the purchaser. Mere delay on the part of the seller to consummate the deal, whether it be with or without collusion with the tendered buyer is not necessarily of itself sufficient to establish as a matter of law that the broker was not the procuring cause of a sale later consummated between the seller and

the broker's customer. Goodwin v. Gunther, supra.

A careful examination of the negotiations occurring early in 1949 in El Paso show no lack of cooperation on the part of the defendant. Nothing being consummated in those negotiations the parties resumed negotiations in May 1949 in New York. Defendant and his attorney went to New York to negotiate with plaintiff's purchaser. Nothing was there consummated. Weed neither bought nor contracted to buy. After these negotiations failed, defendant cancelled the listing.

It is established that plaintiff never, during the existence of this listing, complied with the condition thereof by tendering a purchaser ready, able and willing to comply with the terms of the listing; never sold the property to the purchaser, Weed, prior to the cancellation of the listing.

Beyond a doubt defendant and the purchaser introduced by the plaintiff were near an agreement in El Paso when they went to defendant's lawyer to have a contract drawn. The parties must have deemed that there was a strong probability of an agreement when they met again in New York. However, sale or contract for sale was not then consummated. There is beyond question strong evidence that plaintiff abandoned his efforts to sell to Weed, the purchaser tendered; there is conclusive evidence that prior to defendant's active resumption of the negotiations with Weed he attempted to withdraw the listing—informed plaintiff that he did not desire to sell. In September 1949, prior to the sale in March 1950, he notified plaintiff in writing the listing was cancelled. As has been stated, after a broker has a reasonable time to produce a purchaser ready, able and willing to purchase in accordance with the listing, the seller has a right to withdraw the offer. 7 Tex.Jur. p. 479 ¶82.

However, this withdrawal must be in good faith—it must not be after the broker has procured a buyer willing and able to buy on terms satisfactory to the seller. In this case, after the seller and buyer had failed to agree on terms in New York in May, the purchaser tendered by plaintiff came to El Paso some time in the early part

of 1950. He at once made friendly overtures to defendant. Later, negotiations were opened with defendant to purchase the property, in March 1950 a sale was consummated. This sale was of course upon terms satisfactory to defendant. This sale was in a very general sort of sense in accordance with the listing with plaintiff, but not in strict accord therewith. The same property was sold, although in the interval between the initiation of negotiations other property had been acquired. From the very nature of the property at the time of its listing it was contemplated that it should not remain static. A large quantity of the property was merchandise exposed to sale from day to day. The very nature of this property would vary in amount from time to time. The parties had this in mind.

It would seem that plaintiff was accorded a reasonable time in which to obtain a purchaser before the termination of the listing by the defendant. If this be correct the question narrows itself to this—Did plaintiff before the withdrawal of the listing obtain such purchaser? No sale and no valid contract of sale was consummated prior to March 1950. It cannot be said that the sale consummated in March 1950 was in accordance with the listing. The question then narrows itself to this—Did defendant after plaintiff tendered a purchaser, in bad faith delay the consummation of the transaction and consummate same? This bad faith might be constituted by secret intention on the part of the owner to continue the negotiations initiated by the broker and to avail himself of his services.

■ The fact that defendant did sell to the customer obtained by the broker constitutes some evidence that the broker was the procuring cause of the sale. Defendant recognized this when he plead as a defense that the listing had been withdrawn and plaintiff had abandoned all efforts to sell. This was a good defense—a good defense in a final trial if established by the evidence. A justification for the rendition of summary judgment if these facts constituting the defense be established as to such facts as a matter of law. Facts are not established as a matter of law if there is

evidence direct or circumstantial negativing their existence.

In our opinion the circumstances that the defendant did consummate the sale with the purchaser on terms satisfactory to him constitutes some evidence that the negotiations were not broken off in good faith. The time element cannot be conclusive here. The parties were dealing with a rather involved and complicated matter.

■ There are other circumstances which a jury could properly consider in passing on the question of McFadden's good faith. Neigut testified that McFadden told him to write to Weed and tell him the deal was off as far as he (McFadden) was concerned, and Neigut did write Weed to this effect on May 9, 1949. On October 27, 1949, McFadden wrote Neigut cancelling his offer contained in the listing memorandum. The question at once arises —Why did McFadden have Neigut write Weed that he (McFadden) was through with him, rather than write him to this effect himself? It is a legitimate inference that his purpose may have been to protect himself from paying Neigut a commission. One of the terms on which the deal was finally consummated was that the Food Mart partnership business was to be incorporated, and the evidence is undisputed that McFadden had it incorporated immediately after his return from New York in May 1949. It is a legitimate inference that his purpose in doing so was to consummate the deal. McFadden testified that after the deal fell through in New York he felt pretty bad; that they left very unfriendly (obviously referring to Weed and himself); yet when Weed came to El Paso in January 1950 McFadden had dinner with him at the hotel and apparently they were on friendly terms and entered into negotiations which culminated in the consummation of the deal. It is a legitimate inference that perhaps they were not so unfriendly when McFadden left New York the preceding May, and that the negotiations were not in fact entirely terminated. All these were circumstances which added to the fact that the defendant did consummate the sale with the purchaser introduced to him by plaintiff,

raised an issue as to whether the negotiations between McFadden and Weed were broken off in good faith, and whether Neigut was the procuring cause of the deal which was finally consummated.

In our opinion the court erred in rendering the summary judgment in favor of the defendant. There is some evidence, at least, that defendant had never in good faith broken off negotiations with plaintiff's customer, and the broker's efforts were the procuring cause of the sale. If this be correct the court erred in instructing verdict in favor of defendant.

It is ordered that the cause be reversed and remanded.