William A. NEIGUT, Appellant,

v.

D. L. McFADDEN, Appellee.

No. 5083.

Court of Civil Appeals of Texas.

El Paso.

March 16, 1955.

Rehearing Denied April 6, 1955.

Adams, Browne & Sample, Beaumont, for appellant.

Jones, Hardie, Grambling & Howell, Andress, Lipscomb & Peticolas, El Paso, for appellee.

HAMILTON, Chief Justice.

This suit was filed by appellant Neigut in the 41st District Court of El Paso County in October 1950 against David L. McFadden, appellee. Judgment was entered in 1952 by the trial court on defendant's (appellee's) motion for summary judgment, decreeing that plaintiff (appellant herein) take nothing. The case was appealed to this court, and the judgment of the trial court was reversed and remanded. Neigut v. McFadden, Tex.Civ.App., 257 S.W.2d 864. Trial was before a jury, and the trial court entered judgment on the jury findings for defendant, (appellee herein) decreeing that plaintiff take nothing, from which judgment appellant Neigut has appealed.

Plaintiff's cause of action was based on an alleged written agreement signed by the defendant, which was as follows:

"I will pay five per cent commission on sale of Food Mart stores and Texas Wholesale Company, fixtures at book value, inventory at cost, good will will be $200,000.00.

"All over $200,000.00 (for good will) will be on a fifty-fifty basis with Mr. Neigut.

"(Signed)   D. L. McFadden."

After the agreement was entered into appellant produced a prospective purchaser, J. Spencer Weed, a resident of New York state. Neigut brought Weed to El Paso in the first part of April 1949, and they spent several days with McFadden, trying to work out a deal whereby Weed would purchase the Food Mart Stores and Texas Wholesale Company at a price based on inventory cost, fixtures at book value, and good will at $300,000. It was contemplated that whatever deal was made would be reduced to writing. When it was thought the parties were about together and they adjourned to McFadden's attorney's office to draw up the contract, Neigut was requested by McFadden not to accompany them to the office. McFadden and Weed went to the office of Thornton Hardie, who drew up the proposed contract. However, after the contract was drawn, Weed said he was not ready to sign it; that he wanted to take it to New York to be approved by his attorney and by his associates. When notified by Weed, appellee McFadden and his attorney Thornton Hardie went to New York in the first part of May, 1949, where they further carried on negotiations for several days. On May 5, 1949, McFadden and Hardie left New York, not having entered into any contract with Weed. McFadden told Neigut on his return to El Paso that he was unable to trade with Weed, saying that Weed did not want to pay the price that he asked for the businesses, Weed's particular objection being that the good will of the business was not worth more than $100,000. McFadden, soon afterwards, informed Neigut that he had taken his businesses off the market and they were not for sale to anyone. In September he wrote a letter to Neigut withdrawing the listing of the property from him. Later, in January 1950, Weed came to El Paso and reopened negotiations with McFadden for

the purchase of the same businesses which had been the subject of the negotiations in El Paso and New York early in 1949. A contract of sale was entered into and the property was sold to Weed March 29, 1950, on substantially the same terms upon which the properties had been offered to Weed in April and May of 1949. There was no evidence that McFadden sought or had any negotiations with Weed between May 7, 1949 and January 10, 1950.

Appellee McFadden in the former appeal of this case took the position that even though it was undisputed that appellee sold the property in March 1950 to a purchaser with whom appellant Neigut had initiated negotiations for the sale, it was likewise true that before the sale of March 1950 appellee had notified the appellant that the listing was cancelled, and that therefore as a matter of law Appellant Neigut could not recover a commission. This court in its opinion on said appeal held in effect that if the negotiations that had been carried on in New York were not broken off in good faith, but were in reality still pending with or without collusion with the proposed purchaser, then the cancelling of the listing would not prevent the appellant from being the procuring cause of the sale made or consummated between McFadden and Weed, citing Goodwin v. Gunther, 109 Tex. 56, 185 S.W. 295, 195 S.W. 848. This court further held in effect that the fact that McFadden did sell to the purchaser who had been produced by Neigut on terms satisfactory to himself was some evidence that the negotiations in New York were not broken off in good faith, and that the withdrawal of the listing was not in good faith, and that therefore the court erred in rendering summary judgment in favor of appellee.

The court submitted in the instant case the following Special Issues:

"Question No. 1: Do you find from a preponderance of the evidence that David L. McFadden during the months of April and May, 1949, in good faith used due diligence in endeavoring to close the sale of the Food Mart and Texas Wholesale Company assets to J. Spencer Weed on the terms of sale which McFadden and Neigut had agreed should be submitted to Mr. Weed? Answer yes or no.

"We answer (Signed) yes.

"Question No. 2: Do you find from a preponderance of the evidence that the negotiations for a sale of Food Mart and Texas Wholesale Company assets to J. Spencer Weed upon the terms agreed to between McFadden and Neigut were, in good faith, broken off in May, 1949, because of the unwillingness, if any, of J. Spencer Weed to purchase such assets upon such terms? Answer yes or no.

"We answer (Signed) yes.

"If you have answered either of the above two questions 'no', then, but not otherwise, answer the following question:

"Question No. 3: Do you find from a preponderance of the evidence in this case that the efforts of the plaintiff Neigut were the procuring cause of the sale made by David L. McFadden and his associates to Food Mart, Inc., about April 1st., 1950? Answer yes or no.

"We answer ——————

"Question No. 4: Do you find from a preponderance of the evidence that at the time of the meeting between J. Spencer Weed, David L. McFadden, and Wm. A. Neigut, on or about April 5th., 1949, in the Cortez Hotel in El Paso, Texas, J. Spencer Weed was ready, able and willing to buy Food Mart and Texas Wholesale Company on terms and at the price agreeable to David L. McFadden? Answer yes or no.

"We answer (Signed) No

"Question No. 5: Do you find from a preponderance of the evidence that the deal between J. Spencer Weed and David L. McFadden was complete on April 5, 1949, but the closing of it was put off until a later date? Answer yes or no.

"We answer (Signed) No.

"If you have answered 'No' to the preceding question, then, but not otherwise, answer this additional question:

"Question No. 6: Do you find from a preponderance of the evidence that the only reason the deal between J. Spencer Weed and David L. McFadden was not closed on or about April 5, 1949, was the insistence of David L. McFadden's lawyer that J. Spencer Weed put up fifty thousand dollars in escrow? Answer yes or no.

"We answer. (Signed) No.

"Question No. 7: Do you find from a preponderance of the evidence that at the time on or about April 5, 1949, J. Spencer Weed and David L. McFadden left the conference in the Cortez Hotel to go to the lawyer's office, David L. McFadden took over the handling of the deal and excluded Wm. A. Neigut from any further efforts to close the deal? Answer yes or no.

"We answer (Signed) Yes.

"If you have answered 'yes' to the preceding question, then, but not otherwise, answer this additional question:

"Question No. 8: Do you find from a preponderance of the evidence that on or about April 5, 1949, had Wm. A. Neigut been allowed to continue in the negotiations with J. Spencer Weed, he could have closed the deal with Weed on the terms provided in Neigut's agreement with McFadden? Answer yes or no.

"We answer (Signed) No.

"If you have answered 'No' to question No. 5, then, but not otherwise, answer this additional question:

"Question No. 9: Do you find from a preponderance of the evidence that David L. McFadden and J. Spencer Weed in New York, on or about May 5th., 1949, reached an agreement in the sale of Food Mart and Texas Wholesale Company to J. Spencer Weed? Answer yes or no.

"We answer (Signed) No.

"If you have answered 'No' to Questions Nos. 5 and 9, then, but not otherwise, answer this additional question:

"Question No. 10: Do you find from a preponderance of the evidence that David L. McFadden himself could have closed the deal with J. Spencer Weed if McFadden had been willing to reduce the item of good-will from $300,000.00 to $200,000.00 cash? Answer yes or no.

"We answer (Signed) No.

"If you have answered 'Yes' to question No. 9, then, but not otherwise, answer this additional question:

"Question No. 11: Do you find from a preponderance of the evidence that the agreement dated March 23rd, 1950, between McFadden and Weed is the written evidence of the agreement between McFadden and Weed in New York in May of 1949? Answer yes or no.

"We answer ————

"Question No. 12: Do you find from a preponderance of the evidence that J. Spencer Weed and David L. McFadden continued their discussions and negotiations regarding the sale and purchase of Food Mart and Texas Wholesale Company from May, 1949, until they reached an agreement, which is evidenced by the contract dated March 23rd, 1950? Answer yes or no.

"We answer (Signed) No."

Appellant contends in his points 1, 2, 3 and 4 which are discussed together in his brief, that under the undisputed facts and the finding of the jury in answer to issue No. 7 he is entitled to judgment as a matter of law. Stating his contention briefly it is that the appellant having produced a prospective purchaser and initiated negotiations for the sale while his contract listing was in force, and McFadden having taken over the handling of the deal and having excluded Neigut from any further effort to close the deal, appellee having eventually sold the business to said pur-

chaser produced by Neigut, that he is entitled as a matter of law to the commission.

■ We do not think this is a correct statement of the law as applied to the facts in this case, where it further appears that after McFadden had taken over the handling of the deal to the exclusion of the broker he in good faith used due diligence in endeavoring to close the deal on terms of sale which seller and broker had agreed should be submitted to the prospective purchaser, and broke off negotiations in good faith because the prospective purchaser was unwilling to purchase the property on such terms, and that there was no showing that the broker probably would have closed the deal had be been allowed to participate, and that thereafter when no negotiations were pending and there was no probability of any sale being closed, the owner cancelled the listing. It is our opinion that under such situation the broker cannot as a matter of law recover a commission on a sale made direct by owner several months later. 7 Texas Jur. p. 479, 82. Such holding amounts in effect to saying that at the time the owner made the sale that there was no contract of listing in force as between Neigut and McFadden, and without such contract there can not be any liability on the part of the owner.

■ Appellant maintains that since McFadden had taken over the handling of the matter and excluded him from any further efforts that that in itself made McFadden liable to him for the commission. If appellant be correct in this matter, then McFadden would have been liable regardless of whether he made the sale to Neigut's client or not. We think it is clear that the finding of the jury that the taking over and handling of the deal by the owner did not prevent a sale from being made, and all of the cases cited by appellant upholding his proposition are cases wherein the owner prevented the sale by his action. In those cases the owner was not without fault. In the instant case the effect of the jury findings are that the sale fell through, through no fault of the owner. As was said in the opinion of this court on the former appeal of this case, supra, a listing for sale is no more than an offer, and that when same is for an indefinite time that it may be cancelled at any time before the offer is accepted by the broker producing a purchaser ready, willing and able to purchase at a price agreed upon between the owner and broker. Of course this does not mean that a listing can be cancelled in the midst of negotiations where there is a probability of sale being made, because a broker having produced a prospective purchaser has a reasonable time within which to close his transaction. At the time the listing was cancelled in the instant case the record does not disclose any probability that the sale would ever be made to the prospective purchaser. Appellant's points 1, 2, 3 and 4 are therefore overruled.

■ Appellant in his points 5 and 6 complains of the court in submitting the issue of procuring cause conditioned on a "no" answer to either the first or second Special Issues. He maintains that if the appellant is not entitled as a matter of law to the commission on the sale made by McFadden to Weed in March, 1950, that still he is entitled to the unconditional submission of the issue of procuring cause. We think our position with regard to appellant's first four points fully answers this proposition; and we overrule these points. Had the issue been submitted unconditionally and had the jury answered it favorably to plaintiff, he still could not have recovered because under the findings of the other issues we would be required to find that the owner was within his rights to cancel the listing, and that the broker could not recover for the sale made by the owner while the contract of listing was not in force.

■ Appellant's point No. 7 is overruled because the explanatory instruction complained of as being a general charge relates to Special Issue No. 3, which was not answered.

In view of our holdings, above, it is not necessary to discuss Appellant's point No. 8, which is overruled.

The judgment of the trial Court is affirmed.