**B. SONNTAG, Appellant,**

v.

**C. D. WYCHE, Appellee.**

**No. 16020.**

Court of Civil Appeals of Texas.

Dallas.

July 6, 1962.

Brans & Berryman and Henry Smith, Dallas, for appellant.

John A. Erhard, Robert C. Cox and Alfred L. Ruebel, Dallas, for appellee.

2. See Tex.Jur.2d 191.

DIXON, Chief Justice.

Appellant, B. Sonntag, brought suit against appellee, C. D. Wyche for $5,477.88 on two promissory notes, one in the amount of $5,000 dated December 26, 1947, the other in the amount of $477.88 dated December 29, 1947.

Appellee by way of answer pled offset and settlement.

Trial was before a jury. After appellant had rested, appellee moved for judgment for appellant for $84.88, which sum appellee had tendered into the registry of the court. The court sustained appellee's motion, holding that the material facts were undisputed. Thereupon the jury was discharged and judgment was rendered for appellant for said sum of $84.88.

## PLEADINGS

Appellant in his original petition pled a simple suit on the two promissory notes.

In answer appellee Wyche alleged that prior to December 26, 1947 appellant and appellee had engaged in various joint enterprises involving among other things the purchase and sale of real estate. On May 27, 1946 they had purchased a gravel pit for a consideration of $7,190. The entire consideration was paid by appellant Sonntag, who took title to the property in his own name. However in a written declaration addressed to Wyche and signed by Sonntag on December 30, 1947 it was stated that the property was being held in trust by Sonntag, and that he and Wyche each owned a one-half undivided interest in the property free of debt.

Appellee Wyche further alleged in his answer that a bona fide controversy arose as to the respective interests and liabilities of the parties. To reconcile their differences and effect a settlement between them they then went to the office of their attorney where they reached a settlement agreement as follows:

| "WYCHE - - - SONNTAG | | | | |
|---|---|---|---|---|
| | WYCHE | | SONNTAG | |
| Debit | | Credit | Debit | Credit |
| ½ Purchase Price Gravel Pit | $3,595.00 | | | $3,595.00 |
| Loan to Wyche | 5,000.00 | | | 5,000.00 |
| Profit Hobbs Trailer Sales | 500.00 | $2,750.00 | $5,000.00 | 2,750.00 |
| Gravel Sales | 640.00 | 2,394.62 | 4,149.25 | 2,393.63 |
| | $9,735.00 | 5,144.62 | 9,149.25 | 13,739.63 |
| | | BALANCE | $4,590.37 | |
| | | TAX | 887.01 | |
| | | NOTE | $5,477.38." | |

Pursuant to said settlement agreement Wyche then executed the two promissory notes here involved.

Thereafter, according to Wyche's pleadings, appellant Sonntag sold the gravel pit for a consideration of $10,785. Though it was Sonntag's duty to credit Wyche on his notes for one-half of the proceeds of the sale, Sonntag failed to do so, but retained the entire proceeds for himself. Appellee claimed in his answer that a proper credit to him of one-half the proceeds of the sale of the gravel pit paid the two notes in full. In a supplemental answer appellee Wyche admitted that after crediting him with one-

half of the proceeds of the sale of the gravel pit he still owed Sonntag the sum of $182.88. In his motion for judgment appellee alleged and tendered into court the sum of $84.88 as the amount he owed appellant.

In supplemental petitions appellant Sonntag entered a general denial of appellee's answers and specifically denied the accounting alleged by appellee. He further pled that though it was originally contemplated that they would own the gravel pit jointly appellee had failed and refused to pay his half of the purchase price, therefore their agreement to purchase on a 50–50 basis was terminated. As to the written declaration of trust signed by appellant, Sonntag, he alleged that said instrument was to be delivered to Wyche only if and when Wyche paid his one-half of the purchase price, which Wyche failed to do. Therefore, the consideration for the trust declaration failed. Possession of the instrument was gained by Wyche through subterfuge and artifice. It was not supposed to be transmitted to Wyche until he complied with his agreement to pay his half of the purchase price, and the conditions upon which the instrument was to have been conveyed to Wyche were never consummated.

## FACTS

■ At the trial appellee Wyche testified only briefly after being called by appellant as an adverse witness. He admitted executing the two notes. This testimony was really unnecessary as Wyche had not filed any pleading denying under oath that he had executed the notes. Rule 93(h), Texas Rules of Civil Procedure.

Appellant Sonntag's testimony supported his pleadings. He testified that Wyche had paid nothing on the notes. He further testified that the $5,000 note sued upon did not include Wyche's half of the purchase price of the gravel pit. The note represented a loan of $5,000 cash advanced by Sonntag to Wyche. In this connection we quote from the testimony of Sonntag. **On** cross examination:

"Q * * * And you took those notes as evidence of Wyche's indebtedness to you about that gravel operation, isn't that right?

"A It had nothing to do with the gravel operation; it doesn't mention anything about it.

"Q It had what?

"A. It wasn't even mentioned.

"Q What did it have to do with?

"A Money, I handed to him out of my hand, money; it had nothing do with the gravel pit."

On redirect examination:

"Q And where did the purchase price money come from, that you used to purchase this gravel pit?

"A Out of my pocket.

"Q Now, did Mr. Wyche at that time contribute any money toward the purchase of this property?

"A No, sir.

\* \* \* \* \* \*

"Q Now, they have been talking a great deal, Mr. Sonntag, about a loan of $5,000 to Mr. Wyche. When was that loan made to him, if you recall?

"A. I think it was in December there, wasn't it?

"Q Well, I ask you to identify—

"A Wasn't it?

"Q —Plaintiff's Exhibit C, a while ago, which purported to be a check?

"A Well, that is it.

"Q And is this check—

"A That is it.

"Q —represents the funds advanced which represents a $5,000 loan on their statement?

"A Yes.

"Q And was that check delivered to Mr. Wyche?

"A Let me look at it, I think so, right in front of the bank, we went in the bank and got the money.

"Q Well, will you examine Plaintiff's Exhibit C, Mr. Sonntag, and tell us whether or not that is the check representing the $5,000 loan to Mr. Wyche, which they have set out in their statement, under the 'Loan to Wyche, $5,000'?

"A Yes, sir.

"Q I will ask you this, Mr. Sonntag, was this check honored and paid by the bank, to your knowledge, and deducted from your account?

"A Yes, sir."

With reference to the execution of the written declaration of trust acknowledging Wyche as half owner of the gravel pit, Sonntag testified that he did execute the instrument, but instructed Wyche's attorney (not the attorney now representing Wyche) not to deliver the instrument to Wyche unless and until Wyche had paid his half of the purchase price. The record before us shows numerous instances where Sonntag so testified. We shall quote only a part of Sonntag's testimony in this connection. On cross examination:

"Q Well, now, Mr. Sonntag, did you sell that seven acres of land?

"A Yes, sir.

* * * * * *

"Q How much did you get for it?

"A Ten thousand and I don't know.

"Q Well about ten?

"A Yes, about $10,000.

* * * * * *

"Q All right, did you account to Mr. Wyche for any part of that $10,-000?

"A I had no reason to.

"Q Well, why didn't you have a reason to?

"A He had never bought any part of it.

"Q He had what? What was that, now? Will you say that again?

"A Yes, I don't mind repeating it.

"Q All right, what was it?

"A He had never bought any part of that acreage. Now, that piece of paper you showed me there a while ago—

"Q Yes.

"A —that wasn't supposed to be in his hands, or in yours either.

"Q Uh-huh, whose hands was it supposed to be in?

"A It was stole out of his lawyer's office.

"Q Out of his lawyer's office?

"A Yes, I guess it was his lawyer, it wasn't mine.

* * * * * *

"Q But, you did sign the paper, Mr. Sonntag?

"A. Yes, I know it, I thought I left it in trust, and then he turns up with it.

"Q All right.

"A Now, when he is supposed to get that paper in his hands, he was supposed to leave half of $7,190 there, which he never did, so, he owned no part of that seven acres.

* * * * * *

"A That is the first time I have seen it since it disappeared.

* * * * * *

MR. ERHARD: I would like to know if he understands what he did. He said he signed it in trust. What does he mean by in trust?

THE COURT: You can ask him what he meant.

"Q (By Mr. Erhard) What do you mean by you signed this in trust?

\* \* \* \* \* \*

"A I am telling you that I never made that statement, I give it to Mr. Wyche, I left it in the custody of his attorney for him to get the $3,500, my half of the gravel pit handed to me, and now he comes up with it and I have got nothing. He has got the statement, I will admit that, you have got it in your hands.

"Q Yes.

"A But I have got nothing.

"Q And yet you gave him—

"A I didn't give him anything.

\* \* \* \* \* \*

"Q \* \* \* And then you said that, this statement here, that he owned half interest in the gravel pit?

"A I never said nothing, I never said he owned any thing, he didn't own it, he never owned any part.

"Q All right, but the statement said that in there, that you signed, didn't it?

"A Well, but I can't take the thieves out of the picture, he had no right to it whatever.

\* \* \* \* \* \*

"A You are just for Mr. Wyche, whatever Mr. Wyche says is allright. Mr. Wyche never bought any, he never bought any part of the gravel pit. The gravel pit had no part of this deal whatever in his notes. Just because somebody steals a piece of paper from me, from somebody under trust, and comes up, and then nobody don't owe me anything.

"Q I am not defending anybody taking a piece—

"A Well, they did take it, and that is how come you with it.

\* \* \* \* \* \*

"Q Mr. Sonntag, did Mr. Wyche ever pay to you, \* \* \* the sum of $3,595 on this gravel pit purchase?

"A No, sir.

"Q Did you at any time ever authorize the delivery of this so-called trust letter to Mr. Wyche,

\* \* \* \* \* \*

"A No, sir."

In his testimony Sonntag also attacked the verity of the items in the settlement statement pertaining to gravel sales and the trailer sale.

## OPINION

Appellant briefs only one point of error. He asserts that the court should not have withdrawn the case from the jury where there was evidence of a material fact whether there was proper delivery of the trust declaration and payment of the notes in accordance with the alleged settlement —a question upon which reasonable minds could have differed.

 In passing on this question we must view the evidence in the light most favorable to appellant. White v. White, 141 Tex. 328, 172 S.W.2d 295. If reasonable minds might differ as to the truth of controlling facts, a jury issue is presented. McDonald "Texas Civil Practice," Vol. 3, page 1032. In this case the testimony of appellant as to the conditional delivery of the trust declaration was not denied by appellee, though appellee was present in the court room. Neither did appellee deny appellant's testimony that the sum of $5,000 was actually advanced to appellee as a loan

independently of the purchase of the gravel pit, and that the $5,000 note sued on was given in connection with this cash loan. In the light of appellant's testimony we believe it was error for the court to discharge the jury and render judgment for $84.88 for appellant. See Bynum v. Peoples State Bank of Turkey, Tex.Civ.App., 243 S.W.2d 190.

The judgment of the trial court is reversed and the case is remanded to the trial court for another trial.

YOUNG, J., not sitting.