**GARTH COMPANY, Appellant,**

v.

**JEFFERSON COUNTY, Texas, Appellee.**

**No. 8179.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 30, 1979.

Floyd A. Landrey, Beaumont, for appellant.

John G. Tucker, Beaumont, for appellee.

DIES, Chief Justice.

Realizing the need for a new jail facility in Jefferson County, the Commissioners Court and the County Judge in 1972 con-

cluded that a sixty-nine acre tract owned by Garth Co. in midcounty would provide a suitable location. On October 17, 1972, Jefferson County and the Texas Department of Corrections entered into an "Interlocal Agreement" under the terms of which Texas Department of Corrections agreed, upon receipt of a deed to the land, to build, operate, and maintain a regional correctional facility, and also to install and maintain water and sewer lines parallel to a proposed road. On November 3, 1972, the Texas Highway Department entered Minute Order No. 66885 declaring the road in question to be an official farm-to-market road, which meant, of course, that it would be constructed with State funds. At the November 8, 1972, meeting of the Commissioners Court of Jefferson County, the County Judge was authorized to receive, execute, and deliver any and all legal instruments pertaining to Garth Co., Texas Department of Corrections, and Texas Highway Department involved in the acquisition and construction of the detention center. Thereafter (November 20, 1972) the Commissioners Court accepted the order of the Texas Highway Department for the road and on November 27, 1972, authorized the County Judge to execute the deed and right-of-way easement to Texas Department of Corrections.

On November 30, 1972, Garth Co. for $1,000 per acre deeded the sixty-nine acres to Jefferson County, and thereafter on December 11, 1972, the contract between Jefferson County and Garth Co. was entered into. It is this contract that is the basis of the lawsuit filed by Garth Co., as plaintiff below, against Jefferson County, as defendant below, which we review.

In this contract Jefferson County agreed (1) to cause to be constructed the farm-to-market road referred to above, that provisions should be made for irrigation water to flow from the north to the south side of the road; (2) that Jefferson County should cause to be constructed water and sewer lines on the property; (3) if Jefferson County failed to complete the water mains before December 31, 1974, it would be obligated in liquidated damages to a sum equal to

the fair market price for laying and installing the water lines.

The plan for the Regional Detention Center was abandoned; Jefferson County did not fulfill its obligations under the contract of December 11, 1972, and Garth Co. filed suit against the county seeking damages or, alternatively, specific performance. Garth did not ask for rescission of the contract. Both parties made motions for summary judgment, which was given Jefferson County, and from which Garth Co. perfects this appeal. The parties will generally be referred to herein by name in the hope this will produce more clarity.

■ Jefferson County must assume a negative burden of showing as a matter of law that Garth Co. had no cause of action against the County, and that no material fact issues remain. *Citizens First Nat'l. Bank v. Cinco Exploration Co.,* 540 S.W.2d 292, 294 (Tex.1976); *Neigut v. McFadden,* 257 S.W.2d 864, 868 (Tex.Civ.App.—El Paso 1953, writ ref'd n. r. e.).

Tex.Const. art. XI, § 7, reads in part: "But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for."

In *McNeill v. City of Waco,* 89 Tex. 83, 33 S.W. 322, 323 (1895), the Court spelled out these constitutional restraints:

"These constitutional provisions were intended as restraints upon the power of municipal corporations to contract that class of pecuniary liabilities not to be satisfied out of the current revenues, or other funds within their control lawfully applicable thereto, and which would therefore, at the date of the contract, be an unprovided-for liability, and properly included within the general meaning of the word 'debt.' They have no application, however, to that class of pecuniary

**66**

obligations in good faith intended to be, and lawfully, payable out of either the current revenues for the year of the contract or any other fund within the immediate control of the corporation."

■ It is clear from the testimony of the County Judge and the Commissioners that no effort was made to fund the contingencies of the contract involved because all involved expected the project to be financed by the State agencies involved.

The most that can be said is that Jefferson County *might* have been able to carry out the contract on its own resources. But this fact does not satisfy the Constitution. For in *T. & N. O. Railway v. Galveston County,* 141 Tex. 34, 169 S.W.2d 713 (Tex. Comm'n App.1943, opinion adopted), the Court said:

"Although the obligation did not come for 28 years and amounted to only $5,302.59, a sum which may well have been within the ability of Galveston County to pay out of current revenues for the year 1936 or from some fund then within the immediate control of the county, certainly nobody would seriously affirm that such fact was reasonably within the contemplation of the parties when they made the contract. . . . Therefore, the parties could not contemplate, from any reasonable standpoint, that the indemnity clause would not some time fix a debt on the county in violation of the Constitution."

See also *Stevenson v. Blake,* 131 Tex. 103, 113 S.W.2d 525 (Tex.Comm'n App.1938, opinion adopted).

The order granting Jefferson County a summary judgment is affirmed.

AFFIRMED.