William M. PORTER, d/b/a William M. Porter Cattle Company and Clarendon Cattle Company, Appellant,

v.

SECURITY STATE BANK OF HEDLEY, Texas, et al., Appellees.

No. 07–86–0015–CV.

Court of Appeals of Texas, Amarillo.

Nov. 26, 1986.

Harold W. Ochsner, Ochsner & Baughman, Amarillo, for appellant.

Richard D. Bird, Bird & Bird, Childress, for appellees.

REYNOLDS, Chief Justice.

William M. Porter, d/b/a William M. Porter Cattle Company and Clarendon Cattle Company, perfected this appeal from a take-nothing judgment rendered in his action against Security State Bank of Hedley, Texas, Robert P. Bell, and Cliff Goss, for wrongfully offsetting money he had on deposit with the bank. The judgment, rendered by the court after withdrawing the cause from the jury, will be affirmed.

Porter instituted his action to recover monetary damages from the bank, Bell, and Goss for their action he claimed caused him loss of business and credibility and adverse publicity. In his live trial pleadings, Porter alleged that without any notice to him, the bank appropriated a 21 June 1984 deposit he made plus other money he had on deposit in his account with the bank and, before the due date of an emergency loan he had with the bank and without any demand for payment, applied the entire deposit in his account to his loan indebtedness, causing checks he had written on his account to be returned unpaid. He further alleged that the bank officers had been informed that the monies being deposited to his account were monies belonging to a third party, and the bank's wrongful offset constituted a tortious interference with his fiduciary relationship with the third party.

The evidence adduced before a jury revealed that since 1967, Porter had maintained an account with the bank in the name of Clarendon Cattle Company or William M. Porter Cattle Company. Porter had also obtained from the bank an emergency loan in excess of $300,000, ninety

percent of which was guaranteed by the Federal Housing Administration. On 29 October 1983, Porter renewed the remaining principle balance of $91,031.45 on the loan, to be paid on 29 October 1984 in the total sum, including a finance charge, of $103,775.85.

A 21 June 1984 deposit slip made by Porter shows a deposit of $27,712.50 consisting of a check drawn on the account of Paul Hays in payment of 125 cattle sold him by Porter. Notations on the deposit slip, explicated in an accompanying memorandum of balances, deposits, and withdrawals by check, refer to Porter's attached check number 5566 as an emergency loan payment of $28,000.69 to reduce the emergency loan to $63,030.76. The attached check number 5566, designated as "E.L. paymt.," was drawn on Porter's Security State Bank account, was signed by him, and was made payable to the order of Security State Bank in the sum of $29,463.80.[1] The bank honored the check and credited its amount of $29,463.80 to Porter's emergency loan, showing on its records a loan balance of $61,536.20.[2] The honoring of the check caused the bank to refuse payment of some checks Porter had written on his account because of insufficient funds in the account.

When Porter rested, the court, acting on the motion of the bank, Bell, and Goss for the court to direct the jury to return a verdict against Porter and in favor of them, withdrew the cause from the jury's consideration, discharged the jury, and rendered judgment that Porter take nothing by his action. The take-nothing judgment is challenged with three points of error.[3]

1. The amount of the check above the designated $28,000.69 loan amount payment was explained by Porter as "what they charged me on the interest on that money."

2. Afterwards, Hays stopped payment on his $27,712.50 check, the subject of Porter's 21 June 1984 deposit and a major source for his $29,463.80 check payment on his loan. Subsequently, the bank adjusted Porter's emergency loan balance to $90,562.48 by the addition of $29,026.28 because of Hays' stop payment order and

because of an overdraft in the amount of $1,313.78.

3. In rendering the take-nothing judgment, the court also finalized a previously rendered interlocutory summary judgment decreeing that the bank recover from Porter, d/b/a William M. Porter Cattle Company and d/b/a Clarendon Cattle Company, the sum of $95,594.56, consisting of $92,494.56 due on his emergency loan note and $3,100 attorney's fees, with interest thereon from 4 December 1984 at the rate of 14% per annum, and have foreclosure of its

■ The first point of error is predicated on a question asked Porter while he was being cross-examined in the presence of the jury. After Porter admitted that the Plains National Bank at Lubbock had taken a judgment against him in excess of $700,-000, he was asked, "And were you also indicted by a Federal Grand Jury?" Porter objected and moved for a mistrial. The court sustained the objection and instructed the jury not to consider the question or anything relating to it for any purpose, but denied the motion for mistrial.

Porter charges the court with error in refusing to grant his motion for mistrial. But, under this record, Porter does not present reversible error by the point.

Courts have often held that the question asked Porter in the presence of the jury is improper for any purpose, *Condra Funeral Home v. Rollin*, 158 Tex. 478, 314 S.W.2d 277, 280–82 (1958); *Christie v. Brewer*, 374 S.W.2d 908, 911–12 (Tex.Civ. App.—Austin 1964, writ ref'd n.r.e.), but it does not automatically follow that the court erred in overruling the motion for mistrial, for at that time the whole record had not been made and it was not possible to know whether the asking of the question would cause an improper judgment. *Condra Funeral Home v. Rollin, supra*, 314 S.W.2d at 280. Thereafter, the court withdrew the cause from the jury and rendered judgment. There is the presumption that the trial judge is not influenced by improper evidence, *Victory v. State*, 138 Tex. 285, 158 S.W.2d 760, 765 (1942); a fortiori, it must be presumed that the judge was not influenced by the improper question. Indeed, at submission Porter readily conceded that the trial judge was not influenced by the question. Accordingly, the asking of the question, which had no effect on the rendition of judgment by the court, could amount to no more than harmless error. Tex.R.App.Proc. 81(b)(1); *Biddle v. National Old Line Insurance Company*, 513 S.W.2d 135, 139 (Tex.Civ.App.—Dallas

1974, writ ref'd n.r.e.). The first point of error is overruled.

■ By a bill of exception, Porter and his wife testified that in October of 1983 when they asked Bell about protecting some personal property from creditors, or from the Plains National Bank, Bell said he could take care of that, and then prepared a $20,000 note dated 17 October 1983 and payable to the order of the bank a year later, and a financing statement granting the bank a security interest in the property. Porter signed the note, but he was not advanced any money on it, and he and Bell signed the financing statement. Bell gave Porter a copy of the note and financing statement and put a copy of them in his desk drawer.

When Bell was asked if this scenario was true he replied, "I do not recall that." However, he acknowledged that the note shown him was a copy of a note prepared by someone, but not by him, at Security State Bank, and that the bank had no record of advancing Porter $20,000 on the note.

The note and attached financing statement were, upon objection, excluded from the evidence, both when offered during Porter's testimony to show a fiduciary relationship through the execution of the fictitious note to protect Porter and the bank, and when offered during Bell's testimony to lay a predicate for impeachment purposes. The exclusion, Porter contends with his second point of error, was reversible error for the reason that the note was offered "only for the purpose of impeaching the appellee, Robert P. Bell, because he had stated in deposition and on direct examination that he was not aware of any other notes that the appellant might owe to the appellee bank."

The immediate difficulty with the point of error as drafted is that in advancing it, Porter has failed to support it by revealing where in the record Bell stated that he was not aware of any other notes that Porter

security interest in Porter's property securing payment of the loan. Since no complaint is

lodged against this part of the judgment by the points of error, it will not be further noticed.

might owe to the bank. The deposition Porter mentions is not included in the appellate record, and Porter has not referred to any place in the record, nor was one discovered on review, where Bell made the statement attributed to him. To obtain a reversal upon the point, Porter has the burden to present a record sufficient to show the judgment is erroneous for this reason. Tex.R.App.Proc. 50(d); *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex. 1968). Since the record presented does not reveal the statement attributed to Bell, Porter has not discharged the burden he assumed by making his second-point contention to show that the court rendered an erroneous judgment. *Travelers Insurance Company v. Brown*, 402 S.W.2d 500, 504–05 (Tex.1966).

■ Yet, Porter's main argument under the point, albeit extrinsic to its wording, is that the note and attached financing statement should have been admitted as impeaching evidence because Bell denied having knowledge of them. This argument will be accepted, consistent with the practice of liberally construing points of error, as the contention Porter intended to urge by the point. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633 (Tex.1986).

Assuming *arguendo*, without pausing to decide, that the proper predicate was laid for the admission of the documents as impeaching evidence, *see Brown & Root v. Haddad*, 142 Tex. 624, 180 S.W.2d 339, 340–41 (1944), the court cannot be faulted for excluding them upon the objection of relevancy. The issue made by Porter's pleadings and the adduced evidence bearing thereon was whether the bank, Bell, and Goss wrongfully applied the money deposited in Porter's account to his loan indebtedness. Thus, whether Bell and Porter engaged in a fictitious note and financing transaction to protect the Porters' personal property from other creditors, or another creditor, is a matter foreign to the pleaded and evidenced issue. As such, the documentary evidence of the transaction does not tend to show that a wrongful application of Porter's checking account de-

posits was made. Under these circumstances, it long has been the law that the court does not err in excluding the foreign evidence. *Sutor v. Wood*, 76 Tex. 403, 13 S.W. 321, 323 (1890). The second point of error is overruled.

■ The import of Porter's third point is that the court erred in directing a verdict. This obtains, Porter submits, for the reason that his pleadings and evidence that he informed the bank officers the funds he deposited were fiduciary funds, which the bank took and charged against his emergency loan indebtedness without notice, were sufficient to allow the submission of the cause to the jury. Tested by the submission, the action of the court in withdrawing the cause from the jury and rendering the take-nothing judgment was proper only if, viewing the evidence and the inferences reasonably drawn therefrom in the light most favorable to Porter, no other judgment could be rendered. *White v. White*, 141 Tex. 328, 172 S.W.2d 295, 296 (1943).

Even crediting Porter's testimony that he had informed the bank officers he was depositing fiduciary funds in his account, there is no evidence of an agreement that the identical deposits would either be returned to Porter or paid out for a specific purpose. Absent such an agreement, the funds Porter deposited in the bank became general deposits, which the bank impliedly agreed, and was under a duty, to disburse only in accordance with his instructions. *La Sara Grain v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 564 (Tex.1984); *Mesquite State Bank v. Professional Invest. Corp.*, 488 S.W.2d 73, 75 (Tex.1972).

It follows that, as Porter directed the bank to do so by issuing his check number 5566, the bank was legally obligated to pay from Porter's account and credit to his emergency loan the $29,463.80 amount of the check. *Mesquite State Bank v. Professional Invest. Corp., supra*, at 76. Indisputably, the bank did so. Hence, there being no evidence of probative force of a wrongful offset, the court's action was proper, for reasonable minds could not dif-

fer as to the conclusion to be drawn from the evidence. *See Najera v. Great Atlantic & Pacific Tea Co.,* 146 Tex. 367, 207 S.W.2d 365, 367 (1948). The third point of error is overruled.

The judgment is affirmed.