**A. P. MAXWELL, Petitioner,**

v.

**CARDINAL PETROLEUM CORP.,
Respondent.**

No. B–2469.

Supreme Court of Texas.

June 23, 1971.

Rehearing Denied Oct. 13, 1971.

Further Rehearing Denied Nov. 10, 1971.

Orgain, Bell & Tucker, John G. Tucker, Joe Farris, Jr., Beaumont, for petitioner.

Cox, Smith, Smith, Hale & Guenther, Richard T. Brady and J. Burleson Smith, San Antonio, Mehaffy, Weber, Keith & Gonsoulin, O. J. Weber, Jr., Beaumont, for respondent.

POPE, Justice.

A. P. Maxwell sued Cardinal Petroleum Corporation for breach of an employment contract. At the close of Maxwell's evidence, the trial court instructed a verdict and rendered judgment for Cardinal. The court of civil appeals has affirmed. 460 S.W.2d 436. Maxwell contends that the courts below erred in failing to view the evidence in the light most favorable to him and concluding that he failed to discharge his burden to prove that Cardinal's act of discharging him was not based upon a good faith dissatisfaction. We reverse the judgments of the courts below and remand the cause for trial.

On November 16, 1967, Mission Enterprises, Inc., entered into a letter agreement with Cardinal by which Mission agreed to sell and Cardinal agreed to buy Mission's crude oil gathering business. Maxwell was the sole stockholder of Mission. As a part of the contract, Maxwell agreed that he would not enter into competition with Cardinal for a period of four years. Cardinal agreed to assume Mission's debts and to pay the sum of $100,000 in four equal annual installments. Cardinal in the same contract

agreed that Maxwell "[would] be employed by Cardinal at a salary of $24,000 per year payable in equal monthly installments on or about the first day of each month commencing on the first day of the month immediately following the consummation of our agreement." On November 29, 1967, Cardinal through its president wrote Maxwell a letter which stated:

This letter will evidence the agreement of Cardinal Petroleum Corp. to employ you at a minimum salary of $24,000.00 per year, payable in equal monthly installments at the end of each month. Your employment will be effective December 1, 1967 and continue at the above salary for a period of five years from that date, providing that you are able and satisfactorily perform the necessary services.

On November 30, 1967, instead of waiting for the preparation of a formal contract which their letter contract contemplated, the parties went ahead and closed the trade. Maxwell accepted the terms of the supplemental letter and commenced work as an employee of Cardinal the next day. Commencing in April, 1968, Cardinal began complaining to Maxwell that he was not increasing the volume of the business in southeast Texas by obtaining new business. On December 27, 1968, Cardinal advised Maxwell by letter that it was terminating his employment on January 1, 1969. The only reason stated for this action was the lack of new business.

The judgments of the courts below, as indicated in the motion for instructed verdict and the opinion of the court of civil appeals, are grounded upon this line of reasoning: Maxwell, by accepting the terms of the supplemental letter of November 29, agreed that the contract was to employ him, "providing that you are able and satisfactorily perform the necessary services," and the term "necessary services" imposed upon Maxwell the duty to obtain new business which Maxwell failed to do. The courts then concluded that Maxwell failed as a matter of law to sustain his burden to prove that his discharge was not based upon Cardinal's good faith dissatisfaction with the performance of his services in acquiring new business.

The courts below correctly treated the letter contract and the supplemental letter as parts of the entire agreement. Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579 (1938). They also correctly determined that parol evidence was admissible as to the circumstances surrounding the parties out of which the contract grew. Guardian Trust Co. v. Bauereisen, *supra*; see also, 2 McCormick and Ray, Texas Law of Evidence, Secs. 1681, 1685 (2d ed. 1956). Maxwell has not urged in this court that the contract was not one which was conditioned upon the good faith satisfaction of the employer. See, Coker v. Wesco Materials Corp., 368 S.W.2d 883 (Tex.Civ. App.1963, no writ); Hardison v. A. H. Belo Corp., 247 S.W.2d 167 (Tex.Civ.App. 1952, no writ); Atlas Torpedo Co. v. United States Torpedo Co., 15 S.W.2d 150 (Tex. Civ.App.1929, no writ); Watkins & Thurman v. Napier, 44 Tex.Civ.App. 432, 98 S. W. 904 (Tex.Civ.App.1907, no writ); 53 Am.Jur.2d, Master and Servant, Sec. 37 (1970).

However, the courts below erred in holding that the evidence established as a matter of law that the parties intended by the use of the phrase "necessary services" to impose a duty on Maxwell to produce new business. In reaching that conclusion the courts disregarded much of the direct evidence produced by Maxwell. In testing the evidence against a motion for instructed verdict, the courts did not view the evidence in the light most favorable to Maxwell, disregarding all evidence and inferences which were favorable to Cardinal. Constant v. Howe, 436 S.W.2d 115 (Tex. 1968); Ford v. Panhandle & Santa Fe Ry., 151 Tex. 538, 252 S.W.2d 561 (1952); White v. White, 141 Tex. 328, 172 S.W.2d 295 (1943).

We have before us only Maxwell's testimony, the original letter contract, the

supplemental letter, a letter dated April 23, 1968, from Cardinal calling upon Maxwell to increase the volume of business, and the letter discharging Maxwell dated December 27, 1968. Cardinal did not present any evidence. Contrary to the facts which the court of civil appeals found undisputed or admitted, Maxwell stoutly denied that he ever agreed to increase the business or that the subject was even discussed until some time after the sale of his business. He said the business was highly competitive and that he had already built it up to a profitable one. Contrary to the findings of the court of civil appeals, Maxwell denied that after the sale all facets of the oil gathering business were handled by other Cardinal employees or that his only duty was that of seeking new business. He testified that he fulfilled his duties by looking after the trucks that were used to pick up crude oil at well sites, checking the station facilities, buying crude oil, calling on the people with whom Cardinal had contracts, making contacts to obtain new business, devoting his full efforts to the business, and working from eight to fourteen hours daily for Cardinal. He testified without dispute in the record, that at the time of his discharge, the business in his district was as much or a little more than it was when he sold to Cardinal. There is no evidence that any failure to obtain new business was attributable to lack of effort on the part of Maxwell. From the evidence, the jury may have believed that Maxwell's intended services were only those which he was performing and with which there was no dissatisfaction.

A finding upon the disputed issue concerning the intention of the parties in using the term "necessary services" is essential. The record now before us shows that the sole basis for Cardinal's discharge of Maxwell was his failure to produce results in the form of new business. If a fact finder should determine that the contract did not impose upon Maxwell the duty to generate new business, this would support an inference that Cardinal's discharge of Maxwell was not based upon its good faith dissatisfaction with the services required by the contract. Hardison v. A. H. Belo Corp., 247 S.W.2d 167 (Tex.Civ.App.1952, no writ); Dallas Hotel Co. v. Lackey, 203 S.W.2d 557 (Tex.Civ.App.1947, writ ref. n. r. e.); Golden Rod Mills v. Green, 230 S.W. 1089 (Tex.Civ.App.1921, writ dis.); Noa Spears Co. v. Inbau, 186 S.W. 357 (Tex.Civ.App.1916, writ dis.).

For reasons already fully expressed in the dissenting opinion in the court of civil appeals, we conclude that the apparent holding of that court that the contract is too indefinite to be enforced is not a sound basis for affirmance of the trial court's judgment.

We accordingly reverse the judgments of the courts below and remand the cause to the trial court for trial.

WALKER, Justice (dissenting).

I respectfully dissent. The question of whether the term "necessary services" as used in the contract imposed a duty upon Maxwell to *produce* new business would be highly relevant if the rights of the parties turned upon the existence vel non of good cause for the discharge. That is not, however, the problem in this case. As pointed out by the majority opinion, the Court of Civil Appeals has held that the agreement was a "satisfactory performance" contract. Maxwell does not question that holding here and it has been accepted by the Court, as it must be. The crucial inquiry then is whether there is any evidence that Cardinal's discharge of Maxwell was not based upon good faith dissatisfaction.

This is not a summary judgment case. Cardinal moved for an instructed verdict when plaintiff rested, and the motion was granted. All the testimony comes from Maxwell, and there is no problem of credibility or conflict except in Maxwell's own testimony. His conversations leading up to the letter agreement of November 16, 1967, were with three representatives of Cardi-

nal: Broach, Bickers and Hafernick. The agreement was signed in San Antonio after Maxwell had driven there from Austin with Broach and Bickers.

At one point Maxwell testified that "there wasn't nothing said about new business I was going to get before we signed that thing." Apparently this is the statement regarded by the majority as a stout denial that the subject was even discussed until some time after the sale of the business. The stoutness of the denial is weakened somewhat by Maxwell's other testimony:

> Q. Mr. Maxwell, what is your present recollection of the discussion you had with Mr. Bickers and Mr. Hafernick on or about November 14th and 15th of 1967 with respect to the possibility of your getting new business in the Beaumont-Houston area and the Louisiana area after you became associated with Cardinal?
>
> A. I told them I would try.
>
> Q. Is that all you told them?
>
> A. I told them I would try; I believe I could increase it, but I would be out there trying.
>
> \* \* \* \* \* \*
>
> A. I talked with Mr. Broach before I signed it.
>
> Q. First you talked to Mr. Broach by telephone about new business?
>
> A. Yes, sir.
>
> \* \* \* \* \* \*
>
> Q. \* \* \* and you and Mr. Broach and Mr. Bickers, between Austin and San Antonio, you talked about new business in this area?
>
> A. We talked about getting new business.

Maxwell's testimony concerning a number of other matters is quite clear. The business in which he was engaged consisted primarily in buying crude oil at wells not on a pipeline and transporting the oil by truck from the leases to the pipeline, where it was sold. It was necessary at all times to obtain new business to replace that which was lost as a result of wells going out of production or being connected to a pipeline.

Cardinal "took over" on December 1, 1967. The duties assigned to Maxwell were "looking after trucks; just buying crude oil; anything that pertained to Cardinal Petroleum." He made contacts to try to obtain new business. Cardinal gave him the "tools" he needed to solicit new business. He was furnished an automobile, a credit card, an expense account, and reports showing new wells that were being drilled.

According to Maxwell's testimony, he thought he was going to increase the business. Broach called him the second month "wanting more business." Maxwell expected this, "but not that quick." Beginning with that conversation Cardinal talked with Maxwell a number of times about his failure to produce new business. Finally in September, 1968, he had a conference with King, who is President of Cardinal, and Broach. "I believe Mr. Broach wanted to let me go then and Mr. King wanted to hold me a little longer. He told me to go back to Beaumont and try to build it up." Maxwell did return to Beaumont, but the situation did not improve. "It got worse."

It is clear from Maxwell's testimony that he knew from the beginning that one of the "necessary services" expected of him was the solicitation of new business. He also knew after the second month that his services in that respect were not satisfactory to Cardinal. Although this was brought to his attention repeatedly, there is no suggestion that he ever claimed, to Cardinal or anyone else, that soliciting new business was not one of his responsibilities under the contract. He does not take that position here.

In my opinion the evidence, and particularly the practical construction of the

agreement by the parties, shows as a matter of law that *attempting* to obtain new business was one of the "necessary services" contemplated by the contract. There is no evidence that Cardinal's dissatisfaction with Maxwell's efforts in that respect was not in good faith. It is also my opinion that evidence of bad faith will not be supplied by a factual determination, in retrospect, that the contract did not impose upon Maxwell a duty to *produce* new business. I would affirm the judgment of the Court of Civil Appeals.

CALVERT, C. J., and GREENHILL and STEAKLEY, JJ., join in this dissent.

ON MOTION FOR REHEARING

POPE, Justice.

Cardinal's motion for rehearing urges that we have required a retrial upon an evidentiary issue—whether the term "necessary services" imposed upon Maxwell the duty to acquire new business. The true issue, as Cardinal argues, is one which imposes the burden upon Maxwell to obtain a finding that Cardinal did not act in good faith in discharging him. Maxwell has not complained in this court of the holding by the court of civil appeals that the contract was a satisfaction of the employer contract. Our holding, upon the basis of the record now before us, is that a jury may believe Maxwell's evidence that he was discharged for a reason which was outside the contract, and thus, conclude that Cardinal did not act in good faith. Upon remand, assuming a record similar to the present one, an issue inquiring about Cardinal's good faith dissatisfaction with Maxwell's performance of the contract will suffice.

Either party may file a motion for rehearing within fifteen days from this date.