**BYRD & FOSTER DRILLING, INC.,**
Appellant,

v.

**CENTENNIAL ROYALTY COMPANY,**
Appellee.

**No. 6229.**

Court of Civil Appeals of Texas,
El Paso.

Feb. 16, 1972.

Turpin, Smith, Dyer, Harman & Osborn, Joseph Connally, Odessa, for appellant.

Carrington, Coleman, Sloman, Johnson & Blumenthal, James A. Ellis, Jr., Dallas, for appellee.

## OPINION

WARD, Justice.

This appeal is from the granting of a summary judgment in a contract dispute. The principal defendant below, Centennial Royalty Company, was previously unsuccessful in changing the venue of the case. Centennial Royalty Company v. Byrd & Foster Drilling, Inc., 464 S.W.2d 420 (Tex.Civ.App.—El Paso 1971, no writ). It has now been successful in its presentment of motion for summary judgment on the basis that the appellee had fully performed all of its contractual obligations to the ap-pellant when it paid one-half of the contract costs of certain drilling operations. The severed cause of action as to defendant, M. Ray Hart, pends in the trial Court under a separate number. We affirm the judgment of the trial Court as to absolving the Centennial Royalty Company of additional liability.

The summary judgment proof consisted of an affidavit of Don P. Woody, the president of Centennial Royalty Company, a copy of the testimony of Barney Foster, as president of Byrd & Foster taken at the plea of privilege hearing, and various written documents. It is without dispute that on or about June 1, 1969, an oral agreement was made providing that Byrd & Foster Drilling, Inc. would perform certain drilling operations on certain lands in which M. Ray Hart and Centennial Royalty Company each owned one-half of the operating interest. Byrd & Foster agreed that after the drilling operations had been performed that M. Ray Hart and Centennial Royalty would each be responsible for only one-half the drilling costs. Thereafter, Byrd & Foster, at the request of Centennial's President, filled in some blanks on its own printed form of drilling agreement, signed it, and sent it to the defendant Centennial Royalty where the agreement was then signed by Don P. Woody on June 19, 1969. This written contract described M. Ray Hart and Centennial Royalty Company as "Owner," but the agreement was never signed by M. Ray Hart. On June 19, the defendant Centennial returned the contract to the plaintiff with the following transmittal letter signed by Mr. Woody:

"Enclosed is your copy of the drilling contract on our University Lands No. 1.

"I asked Mr. Ray Hart to have his banker mail you a letter stating that he will (pay) for one-half of the contract drilling of this well as soon as he is furnished with a copy of the log. If it is satisfactory with you, we will be happy to give you a check for payment of our one-half the day the well is logged."

Upon receipt of this signed contract and letter, the plaintiff commenced the work and after the drilling operations were com-, pleted, one-half of the drilling costs were paid to the plaintiff by Centennial through its check dated August 7, 1969, indicating that it was in payment of one-half the invoice cost of the drilling. Thereafter, until the service of citation in this suit on July 2, 1970, Centennial received no further invoice, no further demand, nor was Centennial notified in any way by Byrd & Foster Drilling, Inc. that it was expecting Centennial to pay the unpaid one-half of the drilling costs.

■ A suggestion is made that we are confronted by the law of the case on liability as determined by our judgment in the venue hearing. The doctrine is not applicable here as the points assigned in that hearing by the then appellant were entirely foreign to the present question regarding the full performance by Centennial Royalty of its obligation under the terms of the contract. Breach of contract or amount due need not be in issue in a venue hearing. 1 McDonald, Texas Civil Practice, Sec. 4.11.1. Justice Ramsey recognized in the venue opinion that we were not there confronted with the determination of the ultimate liability of any of the parties. The "law of the case" doctrine does not apply. 4 Tex.Jur.2d Appeal and Error, Sec. 1007, p. 698.

■ As to the merits of the case, the appellant contends that the parol evidence rule excludes all evidence but the printed form of the drilling agreement and that the terms of the printed form clearly and unambiguously create a joint and several liability in M. Ray Hart and Centennial. The fault of the argument is that there are two separate contracts. Under the proof presented, the only contract between appellant and M. Ray Hart is the oral agreement of June 1, 1969, whereby he agreed that he would be responsible for only one-half of the drilling cost. As to the contract between appellant and Centennial, two written instruments were delivered simultaneously and must be treated as parts of this one entire agreement. A. P. Maxwell v. Cardinal Petroleum Corp., 471 S. W.2d 785 (Tex.1971). "It is the settled rule in this State, as well as the rule generally, that written contracts executed in different instruments whereby a single transaction or purpose is consummated are to be taken and construed together as one contract." Veal et al. v. Thomason, 138 Tex. 341, 159 S.W.2d 472, 475. In Board of Ins. Com'rs. et al. v. Great Southern Life Ins. Co. et al., 150 Tex. 258, 239 S. W.2d 803, 809, the Supreme Court again repeated this rule. "It is a generally accepted rule of contracts that 'Where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other.' . . . . . The rule is followed by the courts of this state."

■ In compliance with the rule, the contractual intent of the two parties before us is determined from both the drilling agreement and the transmittal letter. Considering this and the circumstance whereby Byrd & Foster orally had contracted to accept one-half of the cost of the drilling from M. Ray Hart, it seems clear that the parties to this appeal had agreed that Centennial would be obligated to pay only the remaining one-half of the drilling costs. Considering the realities of the situation before us, we so hold.

The judgment of the trial Court is affirmed.