**ZUIDER ZEE OYSTER BAR, INC.,**
Appellant,

v.

**Bill G. MARTIN, Appellee.**

No. 17433.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 12, 1973.

On Rehearing Nov. 16, 1973.

On Second Rehearing Dec. 14, 1973.

Rehearings Denied Dec. 21, 1973.

**294**

Wynne, Jaffe & Tinsley and George H. Kolb and Joe B. Harrison, Dallas, for appellant.

Cantey, Hanger, Gooch, Cravens & Munn and William B. David and Estil Vance, Jr., Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Bill G. Martin sued his former employer Zuider Zee Oyster Bar, Inc., a corporation, for wrongful discharge from employment.

The written contract of employment, allegedly breached, was effective for a period of five years from April 16, 1968. Martin was discharged on December 31, 1970. Trial was to a jury. Special issues inquired merely the amount of money Martin could have earned in the exercise of reasonable diligence from date of his discharge until trial on October 16, 1972, and the amount he would in reasonable probability earn in money from that date until April 15, 1973 (being the last day of the five year period contemplated by the employment contract of April 16, 1968).

Based upon the jury findings and upon the contractual amount of wages under the contract, and other incidental matters, a judgment in damages was awarded to Martin. Zuider Zee Oyster Bar, Inc. appealed.

Judgment reversed and remanded for a reformation by the trial court.

Basic premise for the trial court's judgment upon such a verdict was that there was no evidence of probative force and effect raising an issue upon the matter of justifiable termination of the contract by Zuider Zee because of any breach of contractual duty owed by Martin, in that there was no evidence of any breach by Martin.

The only material language relative to the issues in the case is contained in Paragraph 5 of the employment contract, which reads, as follows:

"During the period of employment hereunder, Employee (Martin) shall be an executive employee of the Company (Zuider Zee) and shall devote his full time and efforts to the business and affairs of the Company, Great Southwest Wholesale Fish & Oyster Company, Inc. ("Southwest") and M&M Advertising Corp. ("M&M") (allowing a reasonable time for vacations) and shall perform such services consistent with his position as may be assigned to him by the Board of Directors of the Company. Employee consents to serve as an officer or director of the Company, Southwest and M&M without any further salary or compensation."

An additional contractual provision was that the writing should constitute the whole agreement of the parties, and that any qualification or variation therefrom should be in writing. There was no such writing.

Neither was there ever any time any services "assigned" to Martin by the Board of Directors of Zuider Zee. 3A Vernon's Ann.Texas St. Business Corporation Act, Art. 2.31, "Board of Directors", provides that the business and affairs of a corporation shall be managed by a board of directors. In the same Code Art. 2.36, "Executive Committee", provides that in the event of certain condition precedent two or more of the directors of a corporation might constitute an executive committee, which committee, to the extent provided by a requisite resolution of the whole board or in the corporation's by-laws, should have and

may exercise all of the authority of the board of directors in the business and affairs of the corporation except where action of the entire board is specified by the Business Corporation Act or other applicable law. In the same Code Art. 9.10, "Actions Without a Meeting", provides that unless otherwise restricted by the articles of incorporation or by-laws, any action required or permitted to be taken at a meeting of the board of directors or any executive committee may be taken without a meeting of the members of such board or executive committee if a consent in writing, setting forth the action so taken, is signed by all the members of the board or of the executive committee as might be requisite to the official action sought to be taken. All these articles were in effect at all material times hereto.

From the foregoing it is readily apparent that Zuider Zee, when confronted with Martin's suit for breach of contract because of his termination as employee thereunder found itself in an exposed position of liability. This it sought to counter by alleging justification for the discharge of Martin. Alleged, but not proved, were various actions or omissions to act on the part of Martin amounting to a breach of duties Zuider Zee considered to have been Martin's obligations. Such as was sought to be proved necessarily failed because no action of Zuider Zee's Board of Directors or of any executive committee acting for such board ever prescribed any "services" which Martin was required to perform.

Examples of defenses sought to be raised by Zuider Zee are to be found in some of the specially requested Special Issues presented and refused by the court, viz: Did Martin's consumption of alcoholic beverages during the period April 16, 1968 and December 30, 1970 materially affect his ability to perform the duties of his employment? Was Martin requested by a member of the Board of Directors of Zuider Zee Oyster Bar to negotiate with the San Antonio and Austin franchisees for the purchase of their restaurants by Ward Foods or one of its subsidiaries, in response to which request Martin stated that an agreement had been reached with such franchisees but that they were not willing to abide by their agreement, which statement by Martin was untrue? During the period April 16, 1968 to December 30, 1970 did Martin fail to work harmoniously with Cecil Hammonds? In the latter part of 1969 and early 1970 did Martin fail to take the necessary steps to open additional Minos Italian food restaurants? Did Martin fail to cooperate and work with Gotthelf & Associates at the Executive Inn in Dallas? During the period within which Martin worked did he fail to take necessary action to prepare the requested franchise sales literature within the time requested?

■ These and many other specially requested issues were tendered and by the court refused. Zuider Zee simply found itself without material evidence on a material issue concerning anything Martin had failed to do which constituted a breach of any duty owed under the contract. It follows that there was no error on the part of the trial court in refusing to submit issues which made inquiry as to things done or failed to be done.

The facts in the instant case make it one to which pertinent principles of law considered in Maxwell v. Cardinal Petroleum Corp., 471 S.W.2d 785 (Tex.Sup., 1971), have application. Indeed the principles here serve to dispose of the question as a matter of law, thus unlike *Maxwell* where it was necessary to reverse and remand for another trial because of existence of a fact question upon the employer's selection of a reason for discharge which either was or not without the contemplation of the contract.

Many points of error are grounded upon Zuider Zee's erroneous belief that matter for litigation in the case was some character of fraud in Martin's inducement of Ward Foods, Inc. to acquire stock in the Zuider Zee corporations. What that trans-

action amounted to was not merely the acquisition of the stock, but the acquisition by Ward of the Zuider Zee companies themselves. The agreement pursuant to which the transaction was accomplished contained a clause making Ward's acquisition conditional upon Martin's executing the April 16, 1968 contract of employment by Zuider Zee. In other words, Ward would not complete its transaction with Martin unless Martin agreed to be employed by Zuider Zee for five years.

▪ Though Ward became the controlling stockholder of Zuider Zee, with its interests thus apparent, the legal situation was no different from one in which Ward, as an individual disassociated from Zuider Zee, urged Zuider Zee to employ Martin. Ward might have done this because of some fraud perpetrated upon it (or him) by Martin but that fact would have no bearing upon the privity of contract between Martin and Zuider Zee and, in law, would not in the instant controversy result in any right in Zuider Zee to assert rights or defenses which might be the entitlement of Ward. This is particularly true since Ward was never made a party to the suit.

That fact was observed by the trial court, but not by Zuider Zee, and accounts for the numerous complaints for the exclusion of evidence on action antedating the "whole" contract of Martin's employment on April 16, 1968. There was no error in the exclusion. That evidence was immaterial for purposes of this case.

▪ Several points of error relate to matters we consider likewise immaterial. Since there was never any action of the board of directors of Zuider Zee discharging Martin the trial court at one point during the trial speculated upon the question of whether he had ever been discharged. But from the pleadings upon which the trial was held there was no question to be tried upon any such issue. Martin plead he was discharged and Zuider Zee acknowledged that he was discharged. Zuider Zee charges that the judgment which was rendered in the case was, in part at

least, rendered by the trial court on the erroneous theory that Martin continued to be employed by Zuider Zee for some period after his discharge on December 31, 1970. If judgment was rendered on such theory it is observable by reference thereto and to the answers returned by the jury to the special issues submitted that it would have made absolutely no difference in the amount for which the judgment was rendered. The points are therefore overruled.

A point of error is founded upon the complaint that the court erred in failing to give a specially requested instruction relating to the two issues which were submitted to the jury. As presented and refused it read: " . . . you are instructed that you may consider and take into account the reasonable value of Martin's services to either himself or to any person or company for whom he has performed services in the nature of employment."

' The issues submitted to the jury inquired of the jury the amounts (1) Martin could have earned in the exercise of reasonable diligence in other employment (including self employment), above necessary expenses, from December 31, 1970 until October 16, 1972; and (2) which Martin would, in all reasonable probability, earn in the exercise of reasonable diligence in other employment (including self employment), above necessary expenses, from October 17, 1972 until April 15, 1973.

■■ Obviously the specially requested instruction would have directed the jury to add an amount in addition which would be the value of the benefit which enured to anyone employing him. This would be no part of any competent measure of damages in the case. The benefit derived by an employer from the services of his employee belongs to the employer and not the employee. It follows that a former employer sued by the same employee for breach of an employment contract, but for which breach it is to be presumed that he would have continued working for such former employer, is not entitled to an off-set against the employee because of the value

of his services to the new employer. If the rule of law were to the contrary no one would employ another as a servant when he perhaps would not profit from his services in the event he had pending a lawsuit like this one.

The authority upon which Zuider Zee relies is Kramer v. Wolf Cigar Stores Co., 99 Tex. 597, 91 S.W. 775 (1906). There Kramer, a former employee, sued for breach of an employment contract after he had gone into business for himself. Under those circumstances it is obvious that the off-set to which the former employer would be entitled in the event it be found guilty of wrongful breach of the employment contract would be not only the salary Kramer paid himself, but in addition the value of his services (to himself) over and above the salary. Obviously no corporation was formed by Kramer which corporation employed him as a third party. In the instant case Martin formed or caused to be formed a corporation for which he went to work as employee, on salary. In essence the corporation was one owned by his grandchildren promoted by Martin for their benefit. There is no allegation by Zuider Zee of any fraud involved, or that any part of the profits from the corporate activities belonged to Martin; nor is there any evidence thereof to which our attention is directed. Under these circumstances there was no error in refusing the instruction requested.

■ There is complaint of the exclusion of deposition testimony to the effect that Martin purposely failed to obtain employment after his discharge by Zuider Zee. Special Issue (No. 1) posed the related ultimate issue. In any event, however, the testimony to which our attention is directed in support of Zuider Zee's contention constitutes no more than evidence already in the record from the lips of Martin, himself. Furthermore Martin was certainly within his rights to purposely refrain from seeking employment; the ultimate issue constituting inquiry upon what he could have earned if he had sought and been successful in obtaining other employment. Also having evidentiary effect was the established fact that his contract with Zuider Zee contained his "non compete" covenant extending even up to the time the case was tried. During the course of trial Zuider Zee stipulated a waiver of that portion of the contract. Except for such waiver, and up to the time when it was made, Zuider Zee would be estopped to contend that prior thereto Martin should have sought employment which might have constituted a violation by Martin of the "non compete" clause of the contract. Our holding should not be construed to include any holding that Martin was not released from the "non compete" covenant by the Zuider Zee breach.

■ Points of error numbered 6 and 7 relate to testimony concerning a transaction anticipated in 1969, and documentary evidence in connection therewith. Such came to naught and was never finalized, allegedly because of the wrongful conduct of Martin, coupled with misrepresentation by him relative thereto. By our examination thereof we have come to the conclusion that even with a concession of the facts sought to be proved these bore upon the matter of a consequent liability of Martin to Ward, not upon the matter of any responsibility of Martin to Zuider Zee under the contract of employment. Therefore there was no reversible error in the exclusion of this evidence.

Zuider Zee complains of error on the part of the court in failing to retain a copy of certain documents produced by Martin for the court's *in camera* examination, thus depriving Zuider Zee of its opportunity to perfect its Bill of Exceptions.

Well in advance of trial Zuider Zee filed its Motion for Production of Documents under Texas Rules of Civil Procedure 167, "Discovery and Production of Documents and Things for Inspection, Copying or Photographing". Oddly the premise for the motion, stated as such, was non-disclosure by Martin of certain facts to Ward Foods, and his alleged inducement of a third party to file an anti-trust suit against

said company. The material sought to be produced was voluminous. Without necessity of resolving such as a question it appears that what Zuider Zee sought was to conduct a "fishing expedition" in the files of Martin's attorneys.

Decision of the court was never made by any official order or notation. The court did write the attorneys that the motion was denied.

Nothing set out in the Motion for New Trial of Zuider Zee referred to action of the court in refusing the discovery and production of documents, etc. If any order denying the motion had ever been placed of record Zuider Zee would have had its Bill of Exceptions without any further action on its part and without formality in addition, perforce the provisions of T.R.C.P. 373, "Exceptions Unnecessary". Thus nothing done by the court could have prevented Zuider Zee from having its right of complaint on appeal if it had laid a premise by insisting that the court's refusal be made a formal order or to be noted on the court's docket. It could only be after such a premise was laid that action demonstrative of the fact that reversible error resulted because of some failure to preserve material for presentation to this appellate court would be necessary to be taken in providing evidentiary support of the Bill of Exceptions.

■ Anyway Zuider Zee made no complaint of action, or want thereof, on the part of the trial court in its motion for new trial. This was a jury trial. No exception to the general rule is evident. The rule is that complaint must be first made to the trial court by the motion for new trial. T.R.C.P. 324, "Prerequisites of Appeal". Thus, by the provisions of the rule and by the cases annotated thereunder, Zuider Zee must be held to have waived any right to complain that it was deprived of an opportunity to perfect a Bill of Exceptions.

In the event we err in this holding we will state that we furthermore hold, assuming the question to be before us, that Zuider Zee failed to discharge the burden requisite to any demonstration of reversible error in that it failed to show good cause for the production of the material desired or the materiality thereof to issues in this case. T.R.C.P. 167.

We have saved for final consideration the point of error of Zuider Zee which we sustain as constituting reversible error. Fortunately the error is such that curative reformation of the judgment may be made by the trial court which will remove the taint therefrom without necessity of another trial.

■ Reversible error lies in the fact that the trial court made a calculation of interest owing to Martin by Zuider Zee upon the monthly amounts of Martin's salary, as Zuider Zee's obligation to pay said amounts accrued prior to judgment, when there was no prayer in the pleadings of Martin for the collection of such interest, and included it in the judgment.

In a case like this one such interest is proper to be awarded if prayed for, just as it is proper to discount future salary amounts not yet due but awarded in a lump sum in advance of accrual. Mr. Eddie, Inc. v. Ginsberg, 430 S.W.2d 5, 12 (Eastland, Tex.Civ.App., 1968, writ ref., n. r. e.). In the case cited there appears the following at page 12 of the opinion, viz: "Where there has been an allowance for a future discount in favor of one of the parties to the suit it is appropriate that prejudgment interest should also be allowed to the other party."

■ In Mr. Eddie, Inc. v. Ginsberg the Eastland Court stated that the defendant should have the discount to which it is entitled in the absence of pleadings. However, nowhere in the opinion is there any statement or holding that the plaintiff is entitled to interest on past due installments in the absence of pleading and prayer for its recovery. We disagree with Martin that no reversible error exists where interest thereon is allowed to the plaintiff without pleading merely because Zuider Zee was allowed the same discount allowed the

defendant in the case cited. Nowhere in such cited case is it stated or inferred that the plaintiff to whom the interest was awarded had failed to seek it by his pleadings. We assume that interest had been sought by him. For a recovery of interest to be sustained it must have a basis in the pleadings. Interest must be asked for specifically or be embraced in the aggregate amount laid as damages. 17 Tex.Jur.2d, p. 266, "Damages", Sec. 200, "Interest". In the case before us neither of the requirements have been met. Reversibility is therefore demonstrated by Zuider Zee's point of error.

The state of the record is such that we cannot readily calculate the interest erroneously allowed by the judgment, but the trial court, whose judgment it was, should be able to make the necessary finding and calculation so that there may be a deletion therefrom and a proper reformed judgment rendered.

Judgment is reversed and remanded to the trial court for reformation and re-entry consistent herewith.

Costs of appeal are awarded as follows: 80% to be paid by Zuider Zee Oyster Bar, Inc., and 20% to be paid by Bill G. Martin.

## ON MOTIONS FOR REHEARING AND LEAVE TO FILE SUPPLEMENTAL TRANSCRIPT

After filing our opinion of October 12, 1973, Zuider Zee filed its motion for rehearing and also its motion for leave to file a supplemental transcript.

Martin filed an instrument denominated Remittitur of Appellee in which he represented and admitted that the amount of interest included in the judgment from which the instant appeal was taken totalled $2,766.51, and prayed that instead of remand to the trial court this Court reform the judgment by deleting said amount so as to reduce the amount of the judgment to the figure of $53,219.03.

By the request that we permit the filing of a supplemental transcript containing the trial court's order granting Zuider Zee the right to inspect certain records in the files of Martin's attorneys, but denying its right to inspect certain other records which also are in the attorneys' files, Zuider Zee sought to correct our statement in our opinion that the court had never made an official order or notation relative to the production of documents.

We deny leave to file the tendered Supplemental Transcript. Save for the fact that thereby we know that there was an order of the court, its provisions would in no way alter our former disposition of the case. No order was ever sought or entered that documents were privileged and not subject to inspection. Zuider Zee's complaint in its motion for new trial does not complain of the court's failure to retain copies thereof.

We also overrule Zuider Zee's motion for rehearing.

We accept the remittitur of appellee, Bill Martin; and, in view of the remittitur, reform the judgment of the trial court so as to reduce the amount of damages thereby decreed to the figure $53,219.03, plus interest.

Since there may be only one final judgment in a case we therefore withdraw and cancel our judgment rendered pursuant to our opinion dated October 12, 1973, and in its place and stead decree as our judgment the reformation of the judgment of the trial court by reducing the amount of damages thereby awarded by $2,766.51 so that the amount of damages to be recovered, as of the date of the judgment of the trial court, shall be $53,219.03, plus interest. As so reformed the judgment is affirmed.

All costs of appeal are taxed against Zuider Zee Oyster Bar, Inc.

## ON SECOND MOTION FOR REHEARING

By our judgment pursuant to what was written on first Motion for Rehearing we taxed all costs of appeal against Zuider Zee Oyster Bar, Inc. The costs of appeal are substantial.

In Zuider Zee's Second Motion for Rehearing it was pointed out that this court has reversed the trial court's judgment insofar as it awards excessive interest and that pursuant to our November 16, 1973 judgment has nevertheless charged it with the costs of appeal whereby it obtained reversal; that though it has won its case in part and accomplished the reduction of the award of the trial court's judgment by the deletion of the improper amount of interest pursuant to the remittitur consequently made (propriety of the amount of remittitur not contested), it is nevertheless taxed with the costs incurred in the accomplishment.

We have concluded that Zuider Zee is correct and that it would be unfair to tax all the costs of appeal against it.

It is therefore ordered by the court that the costs of appeal be retaxed, and the clerk is instructed to this day enter an order in accord, so that 80% of the costs of appeal are taxed against Zuider Zee Oyster Bar, Inc., and 20% of the costs of appeal are taxed against Bill G. Martin.