**Linda MIDDLETON, Appellant,**

v.

**Ivan Maurice PALMER, Appellee.**

No. 20203.

Court of Civil Appeals of Texas, Dallas.

May 23, 1980.

Rehearing Denied June 25, 1980.

Bertran T. Bader, III, Bader & Cox, Dallas, for appellant.

Sidney H. Davis, Jr., Touchstone, Bernays, Johnston, Beall & Smith, Dallas, for appellee.

Before ROBERTSON, CARVER and HUMPHREYS, JJ.

CARVER, Justice.

Linda Middleton appeals from a judgment denying her relief against Ivan Maurice Palmer in a negligence case arising out of an automobile collision at a rural intersection. We find that (1) under the circumstances shown in the record, cross-examination of Middleton as to other accidents, injuries suffered, and claims filed was not improper as showing her "claim mindedness"; (2) side-bar exchanges between counsel were either harmless or invited; (3) Palmer's question to Middleton as to her refusing to give a medical authorization was not improper under the record; (4) jury's answer to special issues declining to find both negligence and damages against Palmer had adequate support in the evidence; and (5) trial court's prior ruling on the plea of privilege, that "some" evidence of negligence which was the proximate cause of "some" injury to Middleton was established for venue purposes, does not bind the trial court when considering a motion for new trial after a jury has reached a different conclusion on same issues. Consequently, we affirm the judgment of the trial court.

The collision occurred in Kaufman County on February 26, 1976, at the intersection of highways US 175 and FM 148. Middle-

ton was proceeding westerly on US 175 and Palmer was proceeding northerly on FM 148. Traffic on FM 148 was required to stop at a stop sign before entering or crossing US 175. The weather was clear and dry and each driver could see the other for 200 to 250 yards. It is undisputed that Palmer came to a stop on FM 148 in obedience to the sign. The movements of the parties thereafter appear to be the inquiry to which the trial was principally devoted, although Middleton's damages were also the subject of considerable testimony. The jury refused to find that Palmer failed to keep a "look out," failed to apply his brakes, or failed to yield the use of the road, but the jury did find that Middleton failed to keep a "look out," failed to apply her brakes, and drove at an excessive speed. The jury answered "None" to a damage issue inquiring as to Middleton's pain and suffering, loss of earnings, and medical expense. Following entry of a take-nothing judgment, Middleton's motion for a new trial was denied and she appeals.

## CLAIM–MINDEDNESS

■ Middleton's points I and II relate to an incident that occurred during her cross-examination. That incident is as follows:

Q. Now, as a result of that accident you were claiming that you hurt your neck and back, aren't you?

A. Yes, Sir.

Q. And you have filed a lawsuit as a result of those injuries, and that lawsuit you're claiming you hurt your neck and your back, didn't you?

MR. BADER: Your Honor, again we object to counsel sticking into the record the fact that these people have filed a lawsuit against their own insurance company as a result of an accident of uninsured motorist. It's highly improper, prejudicial, and it's an attempt to try to show the jury that these folks somehow are claim-minded, object to it. Ask the jury be instructed to disregard it as highly improper and ask that counsel be instructed not to bring these matters up, and we would renew our previous motion made.

MR. SMITH: Your Honor, we object to the side-bar comments of counsel. This matter was taken up with the Court before this trial began and the Court ruled that this was proper, and for counsel at this time to try to infer there's anything improper about this is highly insinuating and improper and we object to his side-bar comments and ask that he be instructed not to pursue them further and ask that the jury—

MR. BADER: Your Honor, counsel has now in front of the jury violated another—

THE COURT: Overrule the objection and we will proceed.

MR. BADER: Your Honor, may I have in the record that counsel has now violated another order of the Court in front of the jury, and can we have the jury retired so that I can make a motion?

THE COURT: All right, sir. Mr. Tackett, take the jury to the jury room.

Middleton argues that Palmer's question *alone* improperly called her "claim mindedness" to the jury's attention. We conclude that Middleton's attorney's own extended remarks emphasizing "claim mindedness" in the guise of an objection contributed equally to the injury, if any, and she should not be heard to complain of error of her own making.

■ If we exclude the extended remarks of Middleton from consideration and examine only Palmer's question, we conclude that no reversible error is shown. In *Bonham v. Baldeschwiler*, 533 S.W.2d 144 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), the rule with regard to evidence concerning "claim mindedness" is stated:

Generally it is error to admit evidence of prior claims to show that the plaintiff is claims minded. [Citation omitted.] When the evidence, however, is offered to show statements which are inconsistent with the party's present position, it is receivable as an admission against interest. [Citation omitted.] It has also been

recognized that it is proper to allow a party to be fully cross-examined as to previous injuries, claims and actions to show that his present physical condition is not the result of the injury presently sued for, but was caused in whole or in part by an earlier or subsequent injury or a pre-existing condition. [Citations omitted.] 533 S.W.2d at 148. Middleton was involved in two accidents, less than three months apart. She filed two lawsuits, each asserting that she suffered neck and back injuries as a result of each accident. We find sufficient inconsistency between Middleton's allegations in the separate suits to justify the questions asked by Palmer as admissions against interest or inquiries about similar injuries from other accidents. Appellant's points I and II are overruled.

## SIDE–BAR REMARKS

 Middleton's points III and IV complain that Palmer improperly accused her of side-bar remarks and improperly claimed the benefit of a prior court ruling to justify Palmer's improper question. Middleton urges that these remarks were so injurious as to warrant reversal. "Side-bar" remarks describe remarks of counsel that are neither questions to a witness nor an appropriate address to the court. The practice is condemned for the *risk of error* which both counsel should avoid, but not every side-bar remark is automatic error requiring reversal. Unless the subject matter of the remark is deemed to deny a fair trial, the remark will be treated as harmless error. We perceive that each counsel improperly demeaned the other in this exchange and that each improperly sought to cloak his action with a prior or current court ruling to impress the jury. We conclude, however, that the trial court's rulings, correctly allowing the question originally asked the witness and denying both counsel's objections as to each others remarks, sufficiently suppressed any possible prejudice to a "fair trial." Appellant's points III and IV are overruled.

## MEDICAL AUTHORIZATIONS

 Middleton complains in points V and VI that Palmer was permitted to ask her about her action in declining to give a medical authorization and that her counsel was not permitted to tell the jury of a condition he had imposed as a condition precedent to such authorization. The exchange is as follows:

Q. Do you remember when you gave your deposition, Mrs. Middleton, back on November 20, 1978?

A. I remember.

Q. You were present with your lawyer, Mr. Bader?

A. Yes, sir.

Q. And you were asked if you would sign a medical authorization which would permit all the parties to review and examine your medical and hospitalization records so we would all know what the doctors and hospitals said about you and you refused to do that, didn't you?

MR. BADER: Excuse me, Your Honor, object to that, especially unless counsel reads into the records upon what basis we said we would do it.

THE COURT: Overruled.

MR. BADER: Your Honor, the Defendant has got absolutely no right to that information. He's got no right to get a medical authorization and attempt to interrogate doctors outside the presence of counsel and Mr. Smith knows that. It's privileged records and they're fully available to him by subpoena if he wants them. He could have made a motion to discover them. We gave him everything we had and now he wants to infer that we're somehow hiding something from him, Judge.

MR. SMITH: Your Honor, object to the side-bar comments.

THE COURT: Overrule the objection. You may proceed.

MR. BADER: Note our exception, Your Honor.

Q. And you refused to sign the medical authorization, didn't you, Mrs. Middleton?

A. On the advice of my attorney.

Q. That's right. That's all we have, thank you.

Middleton relies upon *Travelers Ins. Co. v. Woodard,* 461 S.W.2d 493 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.), where a question similar to that put to her was prohibited by the trial court and such prohibition was held not an abuse of the trial court's discretion. However, in *Martinez v. Rutledge,* 592 S.W.2d 398 (Tex.Civ.App.—Dallas 1979, *writ filed* ), this court held that a trial court did not err in ordering a party to give an authorization to secure his Naval Hospital records from a distant state and from an entity against whom the subpoena power was ineffective. In *Martinez* this court answered several contentions similar to Middleton's arguments here. To a contention that medical records are privileged, *Martinez* holds that any privilege or privacy of medical records is waived when the subject of the records (bodily injuries and conditions) has been placed in issue. To a contention that the records were not actually in the possession of the party and thus incapable of production, *Martinez* holds that a party has a duty "to exercise reasonable diligence to gain production" of the records sought including execution of an authorization. To a contention that it should first be shown that discovery from third persons in possession of the records would refuse access, or refuse to honor a subpoena, *Martinez* holds that useless or wasteful effort will not be required. To a contention that a tendered admission of fact precludes discovery, *Martinez* holds that conclusory admissions do not provide the technical information available from the whole medical record sought in order to examine, or cross-examine medical witnesses. While no contention was made in *Martinez* regarding "conditions" for the protection of the responding party such as Middleton urges here, the court observed:

Finally, we observe that the plaintiff did not move in the trial court for a protective order as he is authorized to do by Tex.R.Civ.P. 186b. For example, he could have requested that the court require the examining or treating doctors not be questioned out of his presence or that it require a delivery of the records for in camera inspection to determine materiality or relevancy. Further, the court's order did not attempt to set out the terms of the authorization which it required plaintiff to furnish. We perceive no reason why plaintiff could not have incorporated into the authorization any reasonable safeguard he deemed necessary as an alternative to his refusal to obey.

592 S.W.2d at 401. Examining Middleton's extended objections here in the light of *Martinez,* we hold that a refusal to discovery voluntarily, "on the advice of counsel," a medical record of a party claiming injury deserves an explanation from the party so refusing. Middleton's refusal to explain must impose on her any conclusion that the jury might wish to draw. Consequently, we find no error in Palmer's posing the question about Middleton's refusal during deposition to sign a medical authorization. We disagree with *Woodard* to the extent of any conflict with *Martinez* or with our holding here.

■ Middleton also complains that she was not given the opportunity to explain her refusal or the "conditions" for signing the medical authorization. We do not find in the record any tender of such testimony by Middleton or her counsel. Neither do we find an exclusion of such testimony, if offered, by the trial court. Middleton's counsel did ask the court to compel Palmer's counsel to develop the testimony, but we know of no authority which holds such a duty to exist. We hold that rehabilitation of a witness is an opportunity of the offering party, not the duty of the cross-examining party. Middleton's points V and VI are overruled.

## NEGLIGENCE AND DAMAGE FINDINGS

■ Middleton's points VII through XII and points XIV through XVII complain that the jury's answers, declining to find Palmer negligent in any respect and de-

clining to find that Middleton suffered any measurable damage, were supported by "no evidence" or "insufficient evidence." Middleton also complains that these answers were "so against the great weight and preponderance of the evidence as to be manifestly unjust." Since Middleton had the burden of proof on each of these issues, the "no evidence" and "insufficient evidence" points are inappropriate. *See Keystone-Fleming Transports, Inc. v. City of Tahoka,* 315 S.W.2d 656 (Tex.Civ.App.—Amarillo 1958, writ ref'd n.r.e.). We may, however, review on the complaint of "manifestly unjust." *See In re Kings Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Factual versions of the accident were presented by the testimony of Middleton, operating her car on US 175, and Palmer, operating his car on FM 148. Palmer was facing a stop sign and admittedly stopped before entering US 175. The issues to the jury reflect the extended examination of these two drivers as to their respective conduct just prior to the collision. In addition, a peace officer testified as to the physical indications he found at the scene a short while after the collision. We have examined this entire record as to the asserted conduct of the parties just prior to the collision and we are unable to conclude that the jury's answers absolving Palmer of negligence in "look out," "brakes," and "yielding right-of-way" are manifestly unjust under *King.*

■ Middleton also urges that, apart from the jury's answers, Palmer was negligent as a matter of law because, after stopping at the stop sign, he failed to yield the right-of-way to Middleton as evidenced by the collision itself. Middleton's argument asserts that the duty to yield right-of-way after stopping at a stop sign is absolute and not conditioned upon the "reasonable man" standard. This argument had been rejected by *Renfroe v. Ramsey,* 477 S.W.2d 648 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ); *Kiebach v. Luker,* 476 S.W.2d 46 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ); *Londow v. Bergeron,* 398 S.W.2d 297 (Tex.Civ.App.—Beaumont

1966, writ ref'd n.r.e.). We conclude that the "yield" issue was not one of law, but an issue of fact, the answer to which by the jury was not manifestly unjust.

■ Middleton further complains that the jury's findings that she suffered no damage is manifestly unjust. Middleton sought damages for pain and loss of earnings, both before and after the trial. At the accident scene, Middleton denied being injured according to Palmer. The peace officer quoted Middleton as saying she hit her knee during the accident. Middleton went to doctor that same day but this doctor did not testify. Some days later she saw a different doctor who testified he found some swelling on the outside of one knee but x-rays reflected nothing. The next doctor Middleton consulted was a month after the accident and her complaint at that time was her neck and back. This doctor testified Middleton's symptoms were principally subjective. Less than three months after the accident in question Middleton had another accident from which she also claimed an injury to her neck and back. Middleton had also had an accident in 1973 where she hurt her neck and back, which injury her doctor said she "would never quite get over." Middleton bore the burden of proof and persuasion on these issues and sought to discharge her burden with her own "interested" testimony which the jury was not bound to accept. Middleton further offered the opinions of doctors that the jury was not bound to accept. *See Hulsey v. Drake,* 457 S.W.2d 453 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.). Middleton urges that the jury could not disregard the "objective" evidence of injury without being "manifestly unjust." Middleton relies upon a line of authorities exemplified by *Morgan v. Mustard,* 480 S.W.2d 416 (Tex. Civ.App.—El Paso 1972, no writ); however, these authorities rest upon (1) "objective" symptoms of injury substantially uncontested in the record and (2) no dispute in the records as to there being but a single accident as a source of injury. Middleton's symptoms were dependent upon her verbal description of "subjective" conditions, al-

though her physicians found physical evidence of swelling and spasms or "objective" conditions of her body which, in the doctor's opinion, were consistent with the verbal description by Middleton. There was no directly observable or "objective" evidence that the *source* of Middleton's injury was the result of the particular accident in question. We conclude that this record reflects substantial evidence which would have supported a jury's conclusion either way, hence, the conclusion the jury did choose on issues of Palmer's negligence and Middleton's damages are not "manifestly unjust." *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). Middleton's points VII through XII and XIV through XVII are overruled.

### VENUE FINDINGS IN SUPPORT OF NEW TRIAL

Middleton's point XIII complains that her motion for new trial was overruled because the trial court erroneously relied upon the jury's findings absolving Palmer of any negligence instead of the court relying on its own prior ruling, at the venue hearing, that Palmer was guilty of *some* negligence which was the proximate cause of *some* damage to Middleton. In essence, Middleton urges that a venue ruling in favor of the plaintiff in a negligence case imposes a liability (act of negligence plus proximate cause) upon the defendant as the "law of the case" and that, should a jury later find otherwise, the trial court errs in failing to grant a new trial. No case is cited in support of this extraordinary proposition, and we have found none. In the absence of authority supporting this argument and in the absence of any compelling demand of justice that this court originate this proposition, we hold that a finding of a venue fact in a venue hearing does not become the "law of the case" or, in any way, bind the court, or jury, in a subsequent trial on the merits. *See Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300 (Tex. Com.App.1936, opinion adopted); *Farmers Seed & Gin Co. v. Brooks*, 81 S.W.2d 675 (Tex.Com.App.—1935, opinion adopted); *Byrd & Foster Drilling, Inc. v. Centennial Royalty Co.*, 477 S.W.2d 319 (Tex.Civ.App.

—El Paso 1972, no writ). Middleton's point XIII is overruled.

Affirmed.