Clara LISTER, Appellant,

v.

Chris MORRIS, Appellee.

No. 5199.

Court of Civil Appeals of Texas, Waco.

Nov. 10, 1972.

David R. Sivertsen, Dallas, for appellant.

Charles C. Whitener, Dallas, for appellee.

OPINION

JAMES, Justice.

This is a rearend automobile collision case wherein the trial court granted an instructed verdict in favor of Defendant-Appellee at the conclusion of the testimony. Plaintiff-Appellant Clara Lister sued for $600.00 damages to her car in a County Court at Law of Dallas County, Texas.

The Defendant-Appellee's motion for instructed verdict was primarily predicated upon the ground that Plaintiff-Appellant had failed to prove that the Defendant-Appellee was driving his car at the time and place of the accident, and that there was

no evidence of probative value to support such finding. The trial court's instructed verdict was likewise predicated upon this ground.

Plaintiff-Appellant appeals on three points of error, all complaining of the instructed verdict, and contending that there was evidence of probative force that the Defendant-Appellee was driving his car at the time and place of the accident. We sustain this contention, and reverse and remand the cause to the trial court for retrial.

Plaintiff-Appellant Clara Lister was driving and operating her 1969 Chevrolet in a northerly direction on Bonnie View Street in Dallas, Texas, at about 3 P.M. on Sunday, August 24, 1969. The cars ahead of her were stopped in her lane of traffic, which caused her car to be stopped. While she was thus in a still position, she was suddenly and without warning struck by another automobile from the rear. She heard no "screeching" of brakes prior to being hit. She said "after she regained her composure" the car that hit her had left the scene of the collision. She did not see who was driving the car that struck her. An eyewitness to the accident (who was in a nearby truck) got the license number of the car who struck her car and gave it to Plaintiff-Appellant. The City Police were called, and a police officer appeared and proceeded to investigate the accident. Defendant-Appellee Chris Morris driving his own car in the company of another police officer arrived at the scene "between fifteen and twenty minutes" after the accident.

A piece of chrome had fallen into the street from Defendant-Appellee's car at the time it struck Plaintiff-Appellant's car, and when Defendant-Appellee brought his car back to the scene, it was found that the piece of chrome lying in the street matched Defendant-Appellee's car perfectly (where the piece was missing).

In short, the Defendant-Appellee Morris admits that he is the owner of the car that struck Plaintiff-Appellant, but denies that he was driving the car at the time and place of the accident.

Since this is an appeal from an instructed verdict, we must consider the evidence that is favorable to the Appellant and discard other evidence and inferences. A determination of such a question must hinge upon acceptance of the evidence and inferences therefrom in their aspects most favorable to Appellant's case, and a discarding of contrary evidence and inferences. Triangle Motors of Dallas v. Richmond (1953), 152 Tex. 354, 258 S.W.2d 60; Ward v. Consolidated Foods Corporation (Waco, Tex.Civ.App.1972) 480 S.W.2d 483, error refused, NRE.

The precise question confronting us is this: Is there any evidence of probative value that Defendant-Appellee was operating his car at the time and place of collision? We believe there is some evidence of probative value to this effect. Since the Defendant-Appellee Morris admits that it was his car that struck Plaintiff-Appellant's car, and since it is not disputed that Defendant's car (along with the Defendant) arrived at the scene of the accident fifteen or twenty minutes after the collision, it is pertinent for us to review the Defendant's testimony in order to determine whether or not there is some evidence of probative value on the point in question.

The following is a summary of Defendant-Appellee's version of what happened on the day of the accident:

That he lives at 5144 Corrigan in Dallas, Texas; that on the day in question (which was a Sunday), he had been to church at the Evangelist Temple on Simpson Stuart Road from 11 A.M. until 1 P.M., and had gone home, and then he drove his car back to the church and arrived back at the church about 2:30 P.M. to attend a 3 P.M. service. The church is located about two and a quarter miles from his home. The church had no parking lot, so he parked

his car on the side of the road in front of the church. He locked the doors of his car, and he was the only person who had a key to his car. He had been inside the church about a half hour, and then he came outside the church and returned to the place where he had parked his car, for the purpose of getting a drum (a musical instrument) out of his car. His car was gone. While he was standing there wondering what happened to his car, a neighbor of his, one Gerald Harding, drove by and asked him what was the matter. The Defendant told Harding about his car being stolen, whereupon Harding suggested taking Defendant down to a filling station to call the Police, and did "carry" the Defendant to a filling station on the corner of Simpson Stuart and Bonnie View Street. The filling station is a "good mile" from the church. Here the Defendant called the police and reported his car stolen. This was about 3:15 P.M. About twenty minutes later a police officer arrived at the filling station, picked up the Defendant, and carried him back towards the church. On the way back towards the church in the company of the policeman, the Defendant saw his car on the side of the road about "a block and a half or two blocks" from the church with three of its four doors open. This was near a clump of trees or brush into which the Defendant surmised that the culprits who stole his car escaped. The policeman had the Defendant to get in his car and see if it would start. The Defendant, having determined that the car would run all right, was told by the policeman to accompany him back to the scene of the accident. Then according to Plaintiff's testimony, the Defendant and his car arrived at the scene of the accident "fifteen or twenty minutes" after the collision. The Defendant, of course, denied that he was driving his car at the time and place of the accident. The driver of his car at the time and place of the collision according to Defendant-Appellee was whoever "stole" his car from the front of the church.

The accident happened at or about 3 P. M., about the same time Defendant said he came out of the church to get the drum. From this point in time, all of the things the Defendant said took place had to happen so as to put him and his car at the scene of the accident fifteen or twenty minutes later. This would include his conversation with Harding, the trip to the filling station a "good mile" away, calling the police, waiting twenty minutes for the police officer to arrive at the filling station, the Defendant's reporting a stolen car to the officer, the trip back to the vicinity of the church where his car was found, and the trip back with his car and the police officer to the scene of the accident, all in fifteen or twenty minutes time. The Defendant not only admits it was his car that caused the collision, but by his own testimony he was the only person driving his car that day (during the times covered by his testimony) except for the short period of time when his car was "stolen". The Defendant's version of what happened is, to say the least, highly improbable.

The record would support findings that the collision was caused by the negligence of the driver of the automobile that struck Plaintiff. Additionally, the record shows that the car which collided with Plaintiff (1) was owned by the Defendant, and (2) that within thirty minutes before the accident (3) the Defendant was driving his car "about a mile or two" from the scene of the accident.

Our careful examination of the record as a whole leads us to believe that there is evidence of probative force to the effect that Defendant-Appellee Morris was driving his car at the time and place of the accident, and that this issue should have been submitted to the jury along with the other pertinent special issues of the cause. The instructed verdict granted by the trial court was therefore erroneous.

Although the evidence may preponderate heavily on one side of the issue, a

jury may not be instructed to return a verdict in any case in which there is sufficient evidence to raise a fact issue on any material question. For this purpose any probative evidence on the issue is sufficient, though it may be inadequate to support a verdict or to warrant a finding on the designated issue. See 56 Tex.Jur. 2 "Trial", par. 207, p. 546 and the cases therein cited.

The cause is reversed and remanded to the trial court for retrial.

Reversed and remanded.