Lewis **FAULKNER**, Appellant,

v.

**HILLSIDE BANK & TRUST COMPANY**, Appellee.

No. 5452.

Court of Civil Appeals of Texas, Waco.

July 31, 1975.

Rehearing Denied Aug. 21, 1975.

McMullen & Snyder, Waylon E. McMullen, Dallas, for appellant.

Crowder, Mattox & Morris, A. Don Crowder, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is a negligence case, wherein after both sides had rested, the trial court instructed a verdict for the Defendant. We reverse and remand the cause to the trial court for trial on the merits.

Plaintiff-Appellant Lewis Faulkner, an architect, brought this suit against Defendant-Appellee Hillside Bank and Trust Co., alleging that said Bank had negligently verified a $15,000.00 cashier's check drawn upon and issued by said Bank. Faulkner contended that based upon the Bank's verification of the cashier's check, which was in fact a lost instrument, that he, Faulkner, accepted the cashier's check as payment for a set of architectural plans of the value of $15,000.00.

Trial was had to a jury, wherein both sides presented testimony, after which Defendant Bank moved for an instructed verdict. The trial court granted Defendant Bank's motion and entered judgment that Plaintiff Faulkner take nothing, from which he appeals.

■ In determining whether it was proper for the trial court to instruct a verdict in this case, we must view the evidence in the light most favorable to Plaintiff-Appellant Faulkner, the losing party. We must indulge against the instructed verdict every inference that may properly be drawn from the evidence; and if the record reflects any evidence of probative force in favor of the losing party, we must hold the instruction improper. *White v. White* (Tex.Sup.Ct. 1943) 141 Tex. 328, 172 S.W.2d 295; *Triangle Motors of Dallas v. Richmond* (Tex.Sup. Ct.1953) 152 Tex. 354, 258 S.W.2d 60; *Lister v. Morris* (Tex.Civ.App., Waco C.A. 1972) 487 S.W.2d 765, no writ history.

■ Viewing the record in the light most favorable to Plaintiff-Appellant Faulkner, as we are required to do, the pertinent facts are as follows:

About 3 PM Friday, September 14, 1973, one B. W. Boyar, a Delta Airlines pilot who was also in the jewelry business, borrowed $15,000.00 from Defendant Bank to enable Boyar to purchase some diamonds in Belgium for his jewelry business. The loan proceeds were made to Boyar in the form of cashier's check No. 105570 drawn on Defendant Bank and payable to "B. W. Boyer." Boyar put the cashier's check in his shirt pocket and left the Bank. About an hour later, on his way to the Citizens Bank in downtown Dallas, Boyar stopped at a service station to get some gasoline, whereupon he discovered he had lost the cashier's check. He returned to Defendant Bank about 4:30 PM and reported that his cashier's check had been lost. The Bank required Boyar to execute an "Affidavit of

Lost Official Check or Security Instrument" and to post an indemnity bond, after which Defendant Bank issued to Boyar a second cashier's check No. 105579, drawn on Defendant in the amount of $15,000.00 and payable to Boyar.

On Sunday afternoon, September 16, 1973, Plaintiff Faulkner, an architect, was inspecting one of his townhouse sites in the Lochwood area of Dallas, at which time he met a man who introduced himself as Russell Smith. Smith told Plaintiff Faulkner he was a building contractor and expressed an interest in Faulkner's design. Smith also represented to Plaintiff Faulkner that his partner in the construction business was a man named "B. W. Boyer." Plaintiff was satisfied through his conversation with Smith that Smith was experienced in the construction field, and made an appointment to meet Smith later that same afternoon at another site where a townhouse designed by Plaintiff was under construction. At this second meeting on this same Sunday afternoon, Smith offered to purchase from Plaintiff a set of architectural plans which Plaintiff had prepared on his own time in 1970. The negotiated price was $15,000.00, and Smith tendered as payment cashier's check No. 105570 which was payable to "B. W. Boyer" and bore an endorsement in that name. Plaintiff took the cashier's check at that time and agreed to have the plans printed and deliver same to Smith the following day.

The next morning, which was Monday, September 17, 1973, Plaintiff Faulkner asked Becky Strahlendorff, (an accountant in the architectural firm where Plaintiff was employed) to call Defendant Bank and verify the cashier's check No. 105570 received from Smith. Plaintiff placed the cashier's check in Mrs. Strahlendorff's hands for this purpose; whereupon about 11 AM she called Defendant Bank on the telephone, with the cashier's check in her hands. Mrs. Strahlendorff's testimony on direct examination concerning her conversation with Defendant Bank is as follows:

"The lady _ _ _ _ well, she answered the phone and told me, 'Hillside Bank and Trust,' and I told her I needed to talk to someone who could validate the check. I was then put on hold for a matter of a few minutes, someone came to the line, a young girl, I gave her my name, who I was associated with and that I wanted to validate the cashier's check. I gave her the date on the check the number on the check and who the check was made out to. She asked me to hold for a few minutes, which I did, she came back on the line and told me it was valid." At another point Mrs. Strahlendorff testified, "She came back on and she told me the check made out to B. W. Boyar was valid and that it was in good standing at that time." On cross-examination her testimony was substantially the same, and concerning the end of the conversation with the lady at Defendant Bank, she testified: "She (the lady at the Bank) came back on the line in a few moments and told me, 'yes, ma'am, it is valid.'"

On Monday morning September 17, 1973, Smith called Plaintiff Faulkner by telephone, at which time they agreed to meet at El Fenix Restaurant to have lunch and to enable Plaintiff to deliver the plans to Smith. Mrs. Strahlendorff reported to Plaintiff that she had verified the cashier's check, and Plaintiff delivered the plans to Smith at the lunch meeting, and accepted the $15,000.00 cashier's check in payment therefor.

On the afternoon of that same day, Monday, September 17, 1973, Plaintiff asked his father to deposit cashier's check No. 105570 in a truck-stop account at the Bank of Lancaster. Mrs. Strahlendorff personally delivered the cashier's check to Plaintiff's father, who in turn presented the check at the Bank of Lancaster and received in return a cashier's check on that bank in the amount of $15,000.00. On the next day, Tuesday, September 18, 1973, Plaintiff took the cashier's check issued by the Bank of Lancaster to the Citizens National Bank and exchanged it for cash. Plaintiff testified he got cash for the cashier's check

because his wife had sued him for divorce just prior to the events above-stated, and his counsel had advised him not to make deposits to his existing bank accounts.

Several days later, Plaintiff was notified by the Bank of Lancaster that Defendant Bank had refused to honor cashier's check No. 105570, whereupon Plaintiff returned the $15,000.00 cash to the Bank of Lancaster. Thereafter Plaintiff Faulkner filed this suit in the case at bar against Defendant Hillside Bank and Trust Co. for negligence. It was undisputed that the endorsement of "B. W. Boyer" on the cashier's check was a forgery.

As above stated, after both sides closed, Defendant Bank moved for an instructed verdict, which was granted by the trial court. From the take-nothing judgment against Plaintiff entered by the trial court, Plaintiff appeals.

We believe the record before us raises fact issues concerning: (1) whether or not Defendant Bank was guilty of negligence in its failure to inform Plaintiff that the cashier's check was a lost instrument; and (2) whether or not Defendant's negligence, if any, was a proximate cause of Plaintiff's damages.

Defendant Bank placed the cashier's check in question into commercial circulation, in the furtherance of its business interests. When the Defendant Bank learned that the cashier's check was lost, it took an affidavit from Boyar and an indemnity bond to protect itself from any loss resulting from the lost cashier's check, and marked its records accordingly.

Did the Defendant Bank owe a duty to tell a good-faith inquirer about the above facts? If it did not, then there is no fact issue of negligence presented. If it did, then Defendant Bank negligently failed to divulge very material facts to Plaintiff's agent, a good-faith inquirer, to wit, that the cashier's check inquired about was a lost instrument.

When Mrs. Strahlendorff made the inquiry on Monday morning of Defendant Bank, said Bank was in possession of knowledge in its files which had been there since the preceding Friday afternoon to the effect that the cashier's check inquired about was a lost instrument. Had the Defendant Bank told Plaintiff's agent the true facts within its knowledge, Plaintiff would have immediately been placed on notice that the party presenting the cashier's check to him was either a thief or one who was otherwise passing the check to him without authority, and thereby Plaintiff would have been more likely spared the damage of parting with his drawings in exchange for the worthless cashier's check. Moreover, the Defendant Bank was the only party in possession of these facts, and the only party in position to furnish this information sought by Plaintiff.

We believe the Defendant Bank was under a duty to tell a good-faith inquirer the true facts in its possession.

Assuming the Defendant Bank owed such a duty, then we believe a reasonably prudent bank could have reasonably foreseen that if it did not reveal the true facts concerning the cashier's check to a good-faith inquirer, that the inquirer might reasonably suffer loss because the check was probably forged and the inquirer might accept it if told the cashier's check was valid. For this reason we believe a fact issue is raised by the record concerning the question of whether Defendant's negligence was a proximate cause of Plaintiff's damage.

We recognize it is undisputed that the endorsement of B. W. Boyar on the cashier's check in question was forged, and that therefore Defendant Bank would not be liable to pay the cashier's check if it were presented to the Bank for payment. But this is not a suit brought upon the instrument itself; rather this is a suit based upon negligence of the Defendant Bank in not disclosing to a good-faith inquirer material facts concerning a lost instrument. By its failure to disclose these facts in its possession, the Bank could reasonably foresee what actually did happen; that is, that

Plaintiff might be induced to accept a worthless cashier's check in return for his parting with property of value.

For these reasons we believe the instructed verdict was improper, and hereby reverse the trial court's judgment and remand the cause to the trial court for trial on the merits.

Reversed and remanded.